**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank D. TAYLOR, Defendant-Appellant.**

No. 78–2024.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 29, 1979.

Decided Jan. 2, 1980.

Certiorari Denied Feb. 19, 1980.
See 100 S.Ct. 1060.

John Oliver Martin, Asst. U. S. Atty., Kansas City, Kan. (James P. Buchele, U. S. Atty., Topeka, Kan., on brief), for plaintiff-appellee.

William F. Dunn, Pratt, Kan., for defendant-appellant.

Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The question in this case in which the defendant was convicted of violation of the Dyer Act is whether the evidence is sufficient to sustain a conviction of aiding, abetting, counseling, etc. the commission of an offense against the United States. The substantive charge on which a conviction was obtained is Count II, which alleged that on or about February 17, 1978, in the District of Kansas, Dorsey J. Taylor and Frank D. Taylor did unlawfully receive, conceal, sell and dispose of a motor vehicle, to-wit: a 1978 Ford Van, Vehicle Identification Number E15HHAH1046, which was moving as, was a part of, and which constituted interstate commerce, knowing the same to have been stolen, in violation of 18 U.S.C. § 2313.

The facts are somewhat unusual in that they disclose a so-called "sting" operation, an undercover police fencing operation. This is shown to have been a joint activity of the federal government through the FBI and the local police.

The date of the occurrence in question was February 17, 1978. The place was a garage in Overland Park, Kansas, which had been modified as a front for the purchase of stolen goods by the FBI and the local police. On that day the defendant, his brother, Dorsey Taylor, and two other men arrived at the headquarters of the "sting" operation for the purpose of selling a virtually new, recently stolen van, and were also there to sell two fur coats.

The garage had a counter. After the defendant, his brother and the other two men had arrived, they signaled from the outside and were admitted with the car. They then stood outside the vehicle at the counter talking to Officer Lequire. The defendant's brother, Dorsey Taylor, conducted the negotiations. He first demanded $1,000 for the vehicle which was a relatively new one.

The evidence established that on the night of February 17, 1978, the Ford van in question had been stolen from Joe Machens Ford at Columbia, Missouri. The evidence was that the vehicle was last seen at 9:00 p. m. on February 17. It had been left outside of the building with the keys in it.

Officer Falk testified that he was the property officer for the "sting" operation. His duty was to take property purchased in the operation into the property storage area, catalog it, give it a number and transfer it for later use. He identified the vehicle in question as such an item through the photographs which he had made. He was able to state what the identification number was. The officer further explained that some of the vehicles that they purchased were returned to the street so that they could be recovered by a local officer, and some were stored at a site at Fort Leavenworth.

Officer Lequire, a police officer in Overland Park, Kansas, who was assigned to the intelligence unit, testified that at the time in question he was assigned to the antifencing storefront operation. He worked as a counterman inside the building, and he and the other countermen posed as buyers of stolen property or fences. Lequire said that he was familiar with defendant Frank D. Taylor; that he had seen him before; that on February 17, 1978, Taylor arrived with several other people in a van which had been reported stolen. He said that the other members of the party were Dorsey Taylor, who was known as "Sugar," Raymond Ladd and Jimmy Coleman. Lequire said that Taylor was known as "Coke." When the people came in on the 17th, according to the witness, they approached the counter and started negotiating a price for the vehicle. The amount of $400.00 was paid for the van and $100.00 was paid for two fur coats. The $100.00 was given to Jimmy Coleman. After this the officers transported "Coke" and "Sugar" back to Kansas City, Missouri. Coleman and Ladd were transported by two FBI agents.

The witness said that Dorsey and Frank stood at the counter. "Sugar" opened up the negotiations. He said that Taylor wanted $500.00 for the van and finally agreed to take $400.00, which was eventually paid to him. Officer Lequire asked how many miles the van had on it and Frank said "700." Actually it had 900 miles. The $400.00 was then paid over to Dorsey Taylor.

The chief witness for the prosecution was Mr. Lee Roll, an FBI agent who had been assigned to the antifencing operation in Overland Park. He talked to Dorsey Taylor for the most part, but the defendant, Frank Taylor, stood on Dorsey's left side and furnished the information concerning the mileage. Roll also said that there were video cameras monitoring everybody present and what was being said and done. The garage door was electronically operated. Exhibit 2 was examined by him, and he gave testimony that that was the exact vehicle that was presented for sale. Dorsey stood on the right side and Frank, the defendant, on the left. Mr. Roll said that one of the first things that he asked Dorsey Taylor was how much he wanted for the van, and he said that he wanted $1,000.00. After some negotiating, Dorsey agreed to accept $400.00.

When it came to the coats, however, Frank Taylor and Raymond Ladd went to the van, opened a sliding side door and removed a clothing carrier which contained two fur coats. These were brought to the counter and the officer took them. Frank Taylor demanded $600.00 for them. He was told that they were not worth it. Later, however, he cut the amount down to $300.00 and finally accepted $100.00. The $100.00 was paid to Jimmy Coleman for the coats, but, according to Agent Roll, Frank Taylor said that they were actually his coats, and he said that "This is my family." He referred to Mr. Coleman as "my brother." Roll said "You keep everything in the family," and the defendant answered "In fact Raymond Ladd is my brother-in-law." Roll then said he did not call him that. He said "This is my brother-in-law." Roll then said "This is family business," and he said "Yes, family business."

The events that occurred on February 17 were recorded on a videotape contained in Exhibit 3 and described as incidents 131, 132 and 133, recorder no. 49. This videotape was viewed by the jury. It was at that point that the court gave the cautionary instruction regarding the other offenses, that is the sale of the coats, saying that it was received for a limited purpose and describing it. The court instructed the jury that it was impermissible and presumably inconsistent for them to find the defendant guilty on both counts. Based on such an instruction, the guilty verdict was on the second count only.

There was one other similar transaction and that was also described by Agent Lee Roll, Jr. This occurred on February 8. Video copies were made of that incident too. These are exhibits 4 and 5, VTR nos. 47 and 48. The particular incident was described as no. 128. The tapes were received, but were not exhibited to the jury. The government stood on its evidence that the defendant was present at the February 8 sale. Mr. Roll was able to say positively that Frank was present at the February 8 transaction.

It is to be noted that a similar offense, restricting instruction, was included in the court's charge. The jury was told that it was received for a limited purpose to show guilty knowledge, intent, plan, scheme or course of conduct, if any, of the defendant with respect to the offenses charged. The jury was told that such evidence was not to be considered by the jury as proof that the defendant was guilty of the offense charged, but only for the limited purpose stated.

The arguments and contentions of counsel are:

First, that the court erroneously denied defendant's motion for a judgment of acquittal made at the close of the government's evidence and renewed at the close of all of the evidence.

Second, the court erroneously admitted videotape exhibits nos. 4 and 5 pertaining to

the February 8 transaction which involved the present defendant.

## I.

WHAT THE CASES HOLD ON THE LEGAL ISSUE, THAT IS, THE EXTENT OF INVOLVEMENT NECESSARY TO SHOW THAT THE PERSON WAS AN AIDER AND ABETTOR AND NOT A VICTIM OF CIRCUMSTANCES *

■ To be guilty of aiding and abetting, the defendant must be found to have willfully associated himself in some positive way with the criminal venture by showing that he has joined the enterprise as something he wishes to bring about and by seeking to make it succeed by some action on his part. It is frequently said that mere presence at the scene of the crime with knowledge that the crime is being committed is not enough. *King v. United States*, 402 F.2d 289 (10th Cir. 1968). However, "evidence of an act of relatively slight moment may warrant a jury's finding participation." *United States v. Garguilo*, 310 F.2d 249 (2d Cir. 1962). It is necessary only that the defendant knowingly associate himself in some way with the criminal venture in order to be an aider and abetter. *Nye & Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949). So, he need only show that he is part of it. One does not have to have an active stake in the outcome of the crime to be guilty of aiding and abetting. *Wyatt v. United States*, 388 F.2d 395, 400 (10th Cir. 1968). Mere presence can be enough to support a conviction if it is intended to and does aid the primary actors. *Long v. United States*, 124 U.S. App.D.C. 14, 20, 360 F.2d 829, 835 (D.C. Cir. 1966).

■ Participation may be proven by circumstantial evidence. *United States v. Garguilo, supra.* Conduct of the defendant or special circumstances may justify an inference that the defendant has associated himself with the criminal objective. *United States v. Rosa*, 404 F.Supp. 602 (D.C.Pa. 1975), aff'd 535 F.2d 1248 (3rd Cir. 1976), cert. denied 429 U.S. 822, 97 S.Ct. 71, 50 L.Ed.2d 83 (1976). Evidence of involvement in a criminal plan or scheme may support an inference of criminal intent and participation from a defendant's knowledgeable presence on the scene where a crime is actually committed by another. *King v. United States, supra.*

## II.

### WAS THE EVIDENCE SUFFICIENT?

■ The main thrust of the argument on appeal is that the evidence against Frank D. Taylor was inadequate and insufficient to establish that he was an accessory in the sale of a stolen motor vehicle in violation of 18 U.S.C. § 2313. The argument is that Frank D. Taylor did not participate actively in the sale; that it was Dorsey Taylor who did the negotiating and who made the decision to sell for $400.00. From this it is contended that Frank Taylor was a mere bystander. This is too much. We must disagree with it. The defendant was not a casual bystander. The fact that this was a "sting" operation, a stolen property market, is of high importance. It is hard for an individual to be considered a casual bystander in that kind of atmosphere and indeed Frank D. Taylor was not such a bystander.

After this new Ford van, which had been recently stolen, was driven into the garage, Dorsey and Frank Taylor both stepped down from it and walked to the counter and stood side by side while the negotiations were going on. It was true that Dorsey did the negotiating and finally sold this new vehicle for $400.00. The defendant supplied some information as to the odometer reading. When asked he said it was 700 miles, whereas it was 900 miles. The fact that this vehicle which had a market value far in

---

* The relevant statute is noncommittal on this question. It provides:

    (a) whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

18 U.S.C. § 2(a).

excess of the $400.00 for which it was sold and was brought to this place for sale and was sold for a price far below its value, attested to the fact that it was an illegal sale. Frank D. Taylor was undoubtedly there to give support to his brother, and he admitted at the trial that he knew it was a stolen car.

The circumstances which attended this sale thus support the government's theory that Frank D. Taylor was an aider and abettor under 18 U.S.C. § 2, if not a primary active participant. Surely it was for the jury to evaluate the surrounding circumstances and make its decision as to whether the government had proven that he was a participant and not a mere bystander. The videotape which was viewed by the government allowed the jury to appraise the entire transaction and this, of course, was cogent supporting evidence. Also, the similar offenses were relevant to show that the defendant possessed guilty knowledge and was part of the general scheme.

In summary, here there is evidence that the defendant had previously been at the "sting" operation; that he knew of the crime being committed by his brother; and that he made a statement to the "sting" operator which facilitated the negotiations for the sale of the truck. This evidence should be sufficient to justify a conclusion by the jury that Taylor intended to and did "participate" in the sale of the truck.

### III.

RECEIPT IN EVIDENCE OF THE VIDEOTAPE OF THE FEBRUARY 8, 1978 TRANSACTION. WAS THE WITHHOLDING OF THE TAPE FROM THE JURY ERROR?

We conclude that it was not.

■ The argument is that the trial court erred in accepting in evidence the videotape which had to do with the February 8 transaction and which was offered for the purpose of rebutting defendant's assertion that he had not taken part in that transaction in view of the fact that the tape was not exhibited to the jury.

The error, according to the defendant, was in not exhibiting the tape to the jury since it had been received. The defendant contends that it was somehow more damaging to receive it and not show it than it would have been if the tape had been displayed. If the defendant had been serious about this at the trial, he could have demanded that the tape be played and exhibited by the United States Attorney. He did not choose to do so and now, understandably, he seeks to utilize this somewhat unusual condition, but the court did not refuse to allow the tape to be shown to the jury. The defendant said "I don't want them played, but I do want to lodge my objection to the entry of this or any other tapes in evidence."

We must disagree with the defendant's argument which would have required the court to display these tapes on its own motion. Why the United States Attorney did not exhibit the tapes is also mysterious. It does not, however, constitute error.

Accordingly, the judgment is affirmed.