UNITED STATES of America,
Plaintiff-Appellee,

v.

Leonard ZAMORA and Jody Ratliff,
Defendants-Appellants.

Nos. 84–2665, 84–2693.

United States Court of Appeals,
Tenth Circuit.

Feb. 24, 1986.

Steve H. Mazer, Albuquerque, N.M., for defendant-appellant Leonard Zamora.

Billy R. Blackburn, Albuquerque, N.M., for defendant-appellant Jody Ratliff.

Mark D. Jarmie, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on brief), Albuquerque, N.M., for plaintiff-appellee.

Before BARRETT and SEYMOUR, Circuit Judges, and GREENE, District Judge.*

J. THOMAS GREENE, District Judge.

In these related cases, appellants Leonard Zamora and Jody Ratliff appeal criminal convictions on charges of manufacture of a controlled substance and possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

## FACTS

On August 10, 1984, the Albuquerque Police Department received an anonymous "crimestoppers" tip from a known, reliable informant. The informant told officers he had seen a "speed lab" set up at 7900 Bell Street in Albuquerque, apartment # 6. Acting on the tip, officer Robert Caswell went to the address to investigate. On arriving at the apartment complex, officer Caswell noticed a strong odor of methamphetamine emanating from Apartment # 6. Officer Caswell also noted that the windows of the apartment were covered with blankets.

Based on the observations of officer Caswell and the confidential tip, Caswell and others secured a "no-knock" search warrant and returned to the apartment. They entered the apartment and discovered both appellants in the kitchen. A working "speed lab"—paraphernalia and chemicals

used in the manufacture of methamphetamine—was set up on the kitchen counter. This included beakers, condensors, heating elements and drying lamps. The officers also found equipment essential to the manufacture of phenylacetic acid ("P2P"), an illegal intermediate in the manufacture of methamphetamine and a gram-calibrated scale, small plasteen envelopes and syringes. In addition, the police discovered a small plastic bag containing approximately ¼ gram of methamphetamine, 2 papers with methamphetamine residue, 3 bottles full of a sludge-like liquid containing methamphetamine and a large quantity of P2P, the controlled substance that is a precursor to methamphetamine. Appellants were arrested and the meth lab was shut down. Appellant Ratliff asked permission to change clothes, which she kept in the apartment and proceeded to do so. When booked, she gave as her address 7900 Bell Street, Apartment 6, and admitted that she lived there. Appellant Zamora also listed the apartment as his address.

Prior to trial, appellant Ratliff's counsel sought disclosure of the confidential informant's identity, alleging that the informant could provide exculpating evidence regarding the appellant. The trial court denied the motion. At trial, officer Caswell was called as a witness by the United States. On cross-examination, appellant's counsel attempted to elicit the contents of the crimestopper's call from officer Caswell, but the trial court did not allow the testimony.

The Government introduced evidence regarding the methamphetamine lab and the chemicals present in the apartment through Mark Adams, an analyst with the Albuquerque Police Department Criminalistics Division. Adams testified that he had tested certain chemicals obtained from appellant's apartment, and found methamphetamine and P2P present in substantial quantities. Adams gave as his opinion that between 200 and 250 grams of methamphetamine could be produced from the P2P

* Honorable J. Thomas Greene, United States District Judge for the District of Utah, sitting by designation.

discovered in the apartment. Appellant Zamora was convicted on one count of manufacturing methamphetamine and one count of possession with the intent to distribute methamphetamine, sentences thereon to run consecutively. Appellant Ratliff was also charged with aiding and abetting, and likewise was convicted on both counts, the sentence on one count being suspended and probation granted.

Appellant Zamora raises four issues on appeal:

1—whether the court abused its discretion in permitting the government's chemical analyst to give expert testimony as to manufacture and quantities;

2—insufficiency of the evidence on intent to distribute;

3—failure to dismiss one of the counts, merge them, or impose judgment and sentence concurrently; and

4—whether it was error for the court to fail to instruct the jury that "any liquid may qualify as methamphetamine only if it is injectable."

Appellant Ratliff raises three additional issues:

5—whether the trial court erred in failing to require disclosure of the identity of the confidential informant;

6—whether the trial court erred in limiting cross-examination of a police officer regarding the confidential informant; and

7—whether there was sufficient evidence beyond mere presence at the scene of a crime to sustain conviction.

1. *Abuse of Discretion—Expert Testimony*

■ We note at the outset that on appeal, the trial court's ruling on evidentiary matters will not be disturbed absent an abuse of discretion. *United States v. Lowe*, 569 F.2d 1113, 1116 (10th Cir.), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed. 2d 529 (1978). The trial court has broad discretion and its judgment will be disturbed only for a clear abuse of discretion in assessing the qualifications of expert witnesses. *United States v. Hines*,

696 F.2d 722 at 730 (10th Cir.1982) [citing *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33, 37 (10th Cir. 1975).]

■ Appellant contends that the government's expert, Mr. Adams, was not qualified to testify as an expert on the subjects about which he testified. In this regard, appellant argues that even if Adams was qualified to testify as a chemist, he should not have been permitted to offer opinion testimony that appellant was manufacturing methamphetamine, or testimony as to the quantity appellant could have produced. The record indicates, however, that at the time of trial Adams had extensive practical experience in analyzing controlled substances, including methamphetamine, that he had a degree in biology and chemistry and a background in substance analysis for the City of Albuquerque and the University of New Mexico. Adequate foundation was laid for Adams in his role as an expert in chemical analysis to testify as to the manufacture and the amount of methamphetamine which could be produced from the P2P he personally observed at appellant's apartment. We find no abuse of discretion in the admission of his testimony as an expert as to the matters in question.

2. *Sufficiency of the Evidence as to Intent to Distribute*

■ Appellant's next contention is that the United States presented insufficient evidence to create a jury question as to intent to distribute methamphetamine. Appellant's contention is grounded in the small amount of "marketable" methamphetamine found at the apartment. The record indicates that methamphetamine was discovered in four distinct places in the apartment. There was a small plastic bag containing approximately ¼ gram, 2 papers with residue and 3 bottles filled with a black "sludge" containing methamphetamine.

There is no dispute that appellant could, on this evidence, be found to have *possessed* methamphetamine. The argument proffered by the appellant is that he had so little street-quality methamphetamine that

no reasonable inference could be drawn that he intended to *distribute* it. In support of this contention appellant cites *United States v. Ortiz,* 445 F.2d 1100 (10th Cir.1971). In *Ortiz,* the appellant was convicted of possession of methamphetamine with the intent to distribute and manufacture. The facts in that case are similar to the facts here. Appellants were found in possession of a glass jar containing a small amount of methamphetamine, a small cardboard box containing traces of the drug, and a gallon jug containing 5–6 lbs of 89% methamphetamine in a liquid solution. There, as here, there was no direct evidence of sale, so conviction was based upon inferences from the quantity of drugs in defendant's possession. Id. at 1105. Appellant relies on the following statement in Ortiz:

> The government did not adduce evidence establishing either the relative purity of the dl-methamphetamine, or how many typical dosages of speed could be made from the total of nearly 8½ pounds of dl-methamphetamine contained in the two bottles. Had there been positive proof along those lines, undoubtedly there would have been a more powerful inference that Ortiz possessed the drugs for the purpose of disposal to another. In future cases involving a different factual situation, the presence or absence of such proof may be critical.

The Court also said in Ortiz, that "one should not be required to take leave of his senses when he ascends to the bench." *Ortiz* at 1105. In this case, the evidence is clear that appellant had substantial amounts of methamphetamine in bottles, and sufficient P2P to produce amounts sufficient without more to create a reasonable inference that appellant did intend to sell methamphetamine. Whether or not some third party could be found to purchase the substance is irrelevant if appellant possessed the substance with the intent to distribute it. We believe the record contains ample evidence to raise a question for the jury on that issue.

3. *Failure to Dismiss One Count, Merge the Claims or Sentence Concurrently*

■ Appellant next contends that he was convicted twice for exactly the same acts. This claim is without merit. In *Blockburger v. United States,* 284 U.S. 607, 52 S.Ct. 40, 76 L.Ed. 520 (1931) the test for merger of offenses was stated thusly,

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

In applying this standard to the issue presented here, courts have uniformly held that manufacture and possession with intent to distribute are distinct offenses for which different facts must be proven. *See, e.g., United States v. Berick,* 710 F.2d 1035, 1040 (5th Cir.1983); *United States v. Welebir,* 498 F.2d 346, 352 (4th Cir.1974).

Appellant relies primarily on *Ball v. United States,* —— U.S. ——, 105 S.Ct. 1668, 84 L.Ed. 2d 740 (1985). *Ball* involved a convicted felon who was charged with both receipt and possession of the same firearm and consecutively sentenced on both counts. The Supreme Court held that receipt and possession were virtually indistinguishable and that consecutive sentencing would be inappropriate. In our view *Ball* does not represent the creation of a new standard as urged by appellant, but rather is consistent with *Blockburger.* Possession with intent to distribute and manufacture of methamphetamine are distinct charges requiring proof of different elements. The fact that much of the evidence used to convict under both statutes came from the same locale at the same time is not enough to disturb the broad discretion of the trial court in sentencing.

4. *Jury Instruction on Methamphetamine*

■ Appellant Zamora's final claim of error is that the trial judge refused to give the following instruction: "You are in-

structed that any liquid may qualify as Schedule II methamphetamine only if it is injectable." Defendant's argument in essence is that unless the jury finds a liquid to be injectable, even if it contains methamphetamine, it does not fall within a Schedule II offense. It is admitted that methamphetamine is a Schedule II drug, but it is asserted under 21 U.S.C. § 812 II(c) that it must be injectable.

Appellant apparently has failed to take into account 21 U.S.C. § 811, which grants broad power to the Attorney General to transfer drugs between schedules if he finds potential for abuse and makes certain other findings. Pursuant to the aforesaid section, the Attorney General did promulgate changes in Schedule II, to include methamphetamine, its salts, isomers, and salts of isomers. 21 C.F.R. § 1308.12. Appellant has not challenged the promulgation of this schedule. We conclude that the trial court properly declined to give the proferred instruction.

5. *Identity of the Confidential Informant*

■ The trial court, in overruling appellant Ratliff's pretrial motion to disclose the identity of the informant, entered a memorandum decision denying the motion. The gravamen of the trial court's ruling is that the defendant failed to make the necessary showing required to justify disclosure of the informant's identity.

In *Rovario v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court addressed the issue of informant confidentiality. The court there recognized an important public interest in ensuring the confidentiality of an informant's identity absent a showing that the informant is "relevant and helpful to the defense" or is "essential to a fair determination of the cause ..." *Rovario* at 60–61, 77 S.Ct. at 627–28. In applying the *Rovario* standard this court has held that the defendant must present more than mere speculation about the possible usefulness of an informant's testimony to make the requisite showing. *United States v. Hal-*

*bert,* 668 F.2d 489 (10th Cir.1982); *Gaines v. Hess,* 662 F.2d 1364 (10th Cir.1981).

Here, appellant claims as grounds for revealing the identity of the informant and possible exculpating evidence only that the informant allegedly never personally saw appellant in the apartment. But such evidence would not be essential or helpful to the appellant's cause because in fact the appellant was present when officers entered the apartment on August 10, 1985. Appellant was charged and convicted of possession and manufacture based on the evidence seized at that time.

Appellant also claims that the confidential informant was a witness to the crime charged and that under *Rovario,* the informant must therefore be revealed. But *Rovario* and its progeny have held that if a confidential informant was only a "tipster," and not an active participant in the criminal activity charged, disclosure of the informant's identity is not required. *United States v. Halbert,* 668 F.2d 489 (10th Cir. 1982); *United States v. Perez-Gomez,* 638 F.2d 215, 218 (10th Cir.1981); *Accord: United States v. Lewis,* 671 F.2d 1025 (7th Cir.1982); *United States v. Sherman,* 576 F.2d 292 (10th Cir.1978). Appellant apparently contends that the informant here was more than a "tipster," but there was no showing to identify how the informant was involved in the illegal activity.

We hold that there was no error in the trial court's refusal to require identification of the confidential informant.

6. *Cross-examination to Elicit Out of Court Statements by the Confidential Informant*

■ Appellant next complains that her due process rights were violated when the trial court did not permit inquiry into a telephone conversation between the confidential informant and Detective Caswell of the Albuquerque Police Department. Counsel for the United States objected to questions relating to statements by the informant to Officer Caswell as calling for hearsay, and the court sustained that objection.

On appeal the standard of review of evidentiary rulings is abuse of discretion. *United States v. Espinosa*, 771 F.2d 1382, 1406 (10th Cir.1985). Appellant claims that the questioning fell within hearsay exceptions under Rules 804(a)(1) and 804(b)(5) of the federal rules of evidence because the declarant was unavailable as a witness. But no showing was made as to the applicability of the exceptions. The trial court simply made a straightforward evidentiary ruling sustaining objections as calling for hearsay. There was no assertion by the officer of "informer's privilege" so as to bring into play the 804(a)(1) exception. As to the claimed 804(b)(5) general exception, no prior notice of intention to utilize that exception was given to the United States as required by the rule. Also, there was no showing as to the probative value of the statement or as to efforts made by defendant to obtain the information from other sources.

We find no abuse of discretion in the trial court's evidentiary ruling.

### 7. *Sufficiency of the Evidence as to Participation*

Appellant Ratliff's final contention is that the trial court erred in denying her motion for judgment of acquittal at the conclusion of the United State's case in chief. Appellant challenges the sufficiency of the evidence that she possessed or manufactured methamphetamine or aided and abetted in those offenses. Appellant asserts that the government's evidence only established her "mere presence" at the scene.

 The government's burden on the aiding and abetting of a criminal offense is to show that the defendant "wilfully associated himself in some positive way with the criminal venture by showing that he has joined the enterprise as something he wishes to bring about and by seeking to make it succeed by some action on his part." *United States v. Taylor*, 612 F.2d 1272, 175 (10th Cir.1980). Under the *Taylor* case there must be a showing that defendant knowingly associated herself in some way with the criminal venture. See

also *Nye and Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949). The necessary association or participation may be established by circumstantial evidence, however, and evidence of "relatively slight moment may warrant a jury's finding of participation." *United States v. Garguilo*, 310 F.2d 249 (2nd Cir.1962). It is not necessary to exclude every hypothesis of innocence so long as the totality of the evidence is sufficient to support a conviction. *United States of America v. Pedro Cruz, et al.*, 773 F.2d 1541 (11th Cir. 1985).

 In reviewing the record, we find ample evidence on which the jury could have found that defendant Ratliff participated in or knowingly associated herself with the criminal venture. Beyond "mere presence," an agent of the Drug Enforcement Administration testified at trial that defendant Ratliff had admitted that she lived at the apartment and gave the address there as her address, that her clothes were kept there, some of them being in a clothes hamper which she identified. The meth lab was on the kitchen counter, and paraphernalia was spread out on that counter when the police found appellant Ratliff standing on one side and appellant Zamora standing on the other. Blankets covered the windows of the apartment. Before booking, defendant Ratliff was permitted to change into clothes which were in the bedroom, where an additional hot plate with simmering liquid was found, along with a tall glass flask with brown liquid in it. Under the totality of these facts the jury could have inferred that defendant Ratliff "knowingly participated."

The judgment of the trial is affirmed as to the convictions of both appellants.

AFFIRMED.

SEYMOUR, Circuit Judge, dissenting in part, in No. 84–2693, United States v. Ratliff.

While I agree that Zamora's conviction should be affirmed, I must respectfully dissent from the majority's conclusion that

the evidence was sufficient to sustain Ratliff's conviction on an aiding and abetting theory.

The majority correctly holds, and the cases are legion, that mere presence at the scene of a crime with knowledge that a crime is being committed cannot alone establish aiding and abetting. The Government must prove the defendant wilfully associated herself with the venture, wilfully participated in it as something she wished to bring about, and sought by her action to make it succeed. *See, e.g., Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949); *United States v. Taylor,* 612 F.2d 1272, 1275 (10th Cir.), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1060, 62 L.Ed.2d 782 (1980); *United States v. McMahon,* 562 F.2d 1192, 1195 (10th Cir.1977); *United States v. Tijerina,* 446 F.2d 675, 677 n. 1 (10th Cir. 1971).

Viewing the direct and circumstantial evidence, along with the reasonable inferences therefrom, in the light most favorable to the Government, *see McMahon,* 562 F.2d at 1195, the record reveals not a shred of evidence, let alone proof beyond a reasonable doubt, that Ratliff wilfully and actively participated in manufacturing methamphetamine or possessing it with intent to distribute. The Government failed to prove, and no reasonable jury could find, an overt act designed to aid in the success of this criminal venture, *see United States v. Martinez,* 555 F.2d 1269, 1272 (5th Cir. 1977), or some other affirmative participation which at least encouraged Zamora, *see United States v. Thomas,* 469 F.2d 145, 147 (8th Cir.1972), *cert. denied,* 410 U.S. 957, 93 S.Ct. 1429, 35 L.Ed.2d 690 (1973).

Ratliff did not testify at trial. The evidence introduced disclosed only that Ratliff was standing across the kitchen counter from Zamora when the police entered, *see* rec., vol. III, at 84, selected a pair of jeans from a clothes hamper to change her clothes, *id.* at 139, and, when booked, gave the apartment as her address, *id.* at 133–34. Who actually leased the apartment was never proved at trial. There was no

fingerprint evidence taken from the laboratory paraphernalia. *Id.* at 124. The broadest rational inference which can be drawn is that she acquiesced in the running of the operation. Mere negative acquiescence in the criminal conduct of others, even coupled with guilty knowledge, is not sufficient to establish aiding and abetting. *United States v. Stanchich,* 550 F.2d 1294, 1300 (2d Cir.1977); *Thomas,* 469 F.2d at 147. A higher level of proof is necessary to support such a conviction.

Without proof of some purposeful act intended to contribute to the illegal enterprise, Ratliff's conviction cannot stand. For example, this court in *McMahon,* 562 F.2d at 1195–96, held the evidence insufficient to support a conviction for aiding and abetting the transportation of illegal aliens. It had been established that a car driven by defendant was twice seen near a truck carrying aliens, that the road avoided a border checkpoint, that defendant was related to a truck passenger, that both vehicles had CB radios, and that, after the truck was stopped, defendant's car turned around and headed back towards the truck. In *United States v. Wright,* 450 F.2d 992, 993–94 (10th Cir.1971), we held evidence that defendant and others burglarized one part of a building insufficient without more to establish that defendant also burglarized a separate, locked room in the same building on the same occasion. *Cf. Taylor,* 612 F.2d at 1275–76 (sufficient that defendant had previously been to stolen property market, went there again with perpetrator, knew of crime, and made statement facilitating crime); *Tijerina,* 446 F.2d at 677 (sufficient that defendant, knowing of others' intent to burn government property, drove car and stopped for firewood and gasoline); *King v. United States,* 402 F.2d 289, 292 (10th Cir.1968) (sufficient that defendant saw perpetrator sign forged name on check, drove perpetrator to store where forged check was cashed, and shared in proceeds).

The evidence supports the rational inference that Ratliff lived at the apartment, but not that she participated in the meth-

amphetamine lab. As the Government conceded at oral argument, establishing only that she was Zamora's live-in girlfriend and a knowing spectator would not sustain the verdict. In my view, there is no rational inference beyond these facts. However unfortunate or ill-advised her association with Zamora, Ratliff cannot be convicted for the company she kept. In *United States v. Valenzuela,* 596 F.2d 824, 830–31 (9th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979), defendant lived with her husband on premises where heroin was found and attempted to push the door shut when officers came to execute a search warrant. The court held this evidence insufficient to convict her of possession with intent to distribute heroin, noting that defendant's "mere joint occupancy of the house is at best equivocal," and that her pushing the door added nothing to her mere joint occupancy because she thereafter retreated to join her children. *Id.* at 831. The evidence against Ratliff falls short of even this proof. *See also United States v. Forrest,* 620 F.2d 446, 451 (5th Cir.1980) (and cases cited) (marriage does not support inference that criminal's spouse is criminal or shares in guilty knowledge); *United States v. Longoria,* 569 F.2d 422, 425 (5th Cir.1978) (no conviction by reason of mere association); *McMahon,* 562 F.2d at 1196 (brother-in-law in vicinity of crime not sufficient); *cf. United States v. Soto,* 716 F.2d 989, 991–93 (2d Cir.1983) (evidence that defendant lived in apartment used as narcotics "cutting mill" for three weeks prior to arrest and was found sleeping in room where drugs cut insufficient to convict of conspiracy). More than a mere suspicion of guilt must be established to obtain a criminal conviction, even on an aiding and abetting theory.

The majority holds that Ratliff's living in the apartment and standing in the kitchen where Zamora was operating a methamphetamine lab establishes her guilt beyond a reasonable doubt of manufacturing the controlled substance and possessing it with intent to distribute. I cannot agree. I would reverse Ratliff's conviction on grounds of insufficient evidence.