**UNITED STATES of America,
Plaintiff,**

v.

**Jay Dee WALTERS, Defendant.**

**Criminal Case No. 99–40012–01–SAC.
Civil Case No. 02–3409–SAC.**

United States District Court,
D. Kansas.

May 26, 2004.

Jay Dee Walters, Valley Falls, KS, pro se.

Eric Kjorlie, Topeka, KS, for Defendant.

Anthony W. Mattivi, Office of United States Attorney, Topeka, KS, for Plaintiff.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the defendant Jay Dee Walters's pro se motion pursuant to 28 U.S.C. § 2255 challenging his conviction and sentence. (Dk.285). The government has filed a response in opposition, (Dk.294), and the defendant has filed a reply, (Dk.301). After reviewing the record and researching the relevant law, the court is ready to rule.

## PROCEDURAL HISTORY

The defendant, Jay Dee Walters, and his wife, Cheryl Walters, were indicted on federal drug charges on February 10, 1999.

On May 27, 1999, the grand jury returned a Superseding Indictment charging the defendant and his wife with conspiracy to manufacture and distribute methamphetamine, harboring a federal fugitive, money laundering, and criminal forfeiture of property.[1] The government dismissed the money laundering counts prior to trial.

On December 1, 1999, this matter proceeded to trial on two counts: conspiracy to manufacture and distribute methamphetamine and harboring a federal fugitive. The jury returned its verdict on December 15, 1999, finding the defendant guilty of conspiracy to manufacture and distribute methamphetamine. The jury was unable to reach a verdict concerning the charge of harboring a federal fugitive. The government subsequently dismissed the harboring charge and the criminal forfeiture count was resolved by plea agreement.

The defendant filed a motion for judgment of acquittal or, in the alternative, for a new trial on December 22, 1999, in which he asserted numerous issues including sufficiency of the evidence. The court denied the motion and sentenced the defendant on September 6, 2000, to 121 months imprisonment followed by five years of supervised release. The defendant appealed his conviction and sentence. The Tenth Circuit rejected all of the defendant's arguments and affirmed the defendant's conviction and sentence. The defendant has timely filed his § 2255 motion.

## FACTUAL BACKGROUND

On September 16, 1998, narcotics investigators discovered an operational methamphetamine laboratory at the home of Billy Hill and Rosan Robison in Osage County, Kansas. The investigation led of-

---

1. Cheryl Walters subsequently pleaded guilty to conspiracy to manufacture and distribute a mixture containing a detectable amount of methamphetamine on February 9, 2002. Cheryl Walters was sentenced to 87 months of imprisonment.

ficers to the property of Calvin Neu where, on September 22, 1998, they found a portable methamphetamine laboratory and other personal property belonging to Hill and Robison. After his arrest, Neu agreed to cooperate, but he was murdered and his body was discovered on October 9, 1998. Evidence at the murder scene cast suspicion on Billy Hill. Authorities filed federal drug charges against Hill on October 26, 1998, and issued a warrant for Hill's arrest. Hill remained a fugitive on both the state and federal charges until authorities apprehended him on January 10, 1999.

Billy Hill and Rosan Robison stayed with the defendant on his 80–acre tract of land in rural Jefferson County, Kansas, during the months of October and November 1998. On January 7, 1999, Atchison Police Officers arrested Gary Wamsley for driving with a suspended driver's license and found narcotics both on him and in his vehicle. Wamsley told the officers that he had met Billy Hill while Hill was staying at the defendant's residence. Wamsley revealed that Hill was now staying at Wamsley's farm and cooking methamphetamine there.

Officers went to Wamsley's farm where a stand-off ensued. Billy Hill did not surrender until January 10, 1999, after officers employed chemical munitions. During their search of Wamsley's property, the officers recovered a clandestine methamphetamine laboratory and enough ingredients for manufacturing methamphetamine to produce 760 grams of actual methamphetamine. A chemist with the Kansas Bureau of Investigation (KBI) described the laboratory as being quite sophisticated and as being one of the "best setups" he had investigated.

The grand jury indicted the defendant and his wife on February 10, 1999, for conspiring with Billy Hill and others to manufacture and distribute in excess of one kilogram of methamphetamine. Later

that same day, the defendant voluntarily went to the KBI headquarters along with his wife and their mutual counsel, Eric Kjorlie. The defendant and his wife willingly gave audio-taped interviews. The defendant and his wife each effectively admitted their actions charged in the indictment; however, they each also claimed that they acted only out of fear and intimidation from Billy Hill and Rosan Robison.

The defendant told the KBI that when David Morris brought Billy Hill and Rosan Robison to the defendant's residence, he expected Hill and Robison would only be staying a couple of days and not months. Because his wife was afraid of Hill and Robison, the defendant tried to persuade Morris to take Hill and Robison elsewhere. Morris responded that Hill had threatened to kill the defendant and his wife. The defendant also reported that Hill told them stories about shooting people and that he could hire someone to get the defendant and his family if they divulged his whereabouts. The defendant said that Hill always carried firearms with him.

In his interview with the KBI, the defendant also admitted he had done grocery shopping for Hill and Robison, purchasing various ingredients used in the manufacture of methamphetamine. The defendant had been instructed to buy six boxes of pseudoephedrine pills on each shopping trip. The defendant told KBI Agent Hupp that he and his wife had written letters about being threatened by Hill and Robison. The defendant said that he had given his letter to his mother and that his wife's letter had gone to Glenda Logan.

The defendant's wife, Cheryl, gave a similar statement to KBI Agents. She told of her efforts to convince Morris to move Hill and Robison somewhere else, and Morris warned her that Hill could get rid of them and take over the farm. Cheryl claimed that, on October 1, 1998, she

had written a letter stating that Hill and Robison were fugitives living with her and the defendant against her will. Cheryl said that she gave her letter to Glenda Logan on the condition that Logan was to open the letter if anything happened to her or the defendant. Cheryl admitted to the KBI that she had witnessed Hill and Robison cooking methamphetamine in her house and that she had gone shopping for Hill and Robison on a daily basis. Cheryl said that Robison gave her shopping lists of needed items which included "antihistamine decongestant" pills. .

On February 11, 1999, counsel for the defendant and his wife delivered the letters they mentioned in their respective interviews to the KBI agents. The defendant's letter was dated October 20, 1998; his wife's letter was dated October 1, 1998. In May of 1999, Glenda Logan revealed to Agent Hupp that the defendant and his wife actually wrote their letters in her (Logan's) home on February 10, 1999— after their interviews with Agent Hupp. The defendant submitted to a polygraph examination about his writing of this letter. The polygraph examiner opined that the defendant deceptively answered those polygraph questions.

### ISSUES

In his initial brief in support of his § 2255 motion, the defendant raises eight grounds for relief; each will be addressed in turn. First, the defendant argues that he received ineffective assistance of counsel at the pretrial, trial, and sentencing phases of his trial—in violation of the Sixth Amendment. Second, the defendant contends that his trial was fundamentally unfair because the government introduced evidence about Billy Hill's violent activities. Third, the defendant asserts that his due process rights were violated because his sentence was based upon drug quantities unfairly attributed to him. Fourth, the defendant claims that his due process

rights were violated because his sentence was based on a Schedule II controlled substance when this case actually involved a Schedule III controlled substance. Fifth, the defendant argues that his due process rights were violated because the government failed to provide the grand jury with known evidence favorable to the defendant. Sixth, the defendant contends that the United States lacked jurisdiction to charge him with a federal crime. Seventh, the defendant asserts that 21 U.S.C. § 846 was unconstitutionally applied in this case. Finally, the defendant claims that his Fifth Amendment due process rights were violated because his sentence was based on an amount greater than what the evidence showed at trial.

### EVIDENTIARY HEARING

A court must grant an evidentiary hearing on the defendant's motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. No hearing is required where the factual matters raised by the defendant's § 2255 petition may be resolved on the record before the court. *See United States v. Marr,* 856 F.2d 1471, 1472 (10th Cir.1988). "To be entitled to an evidentiary hearing . . . the [defendant] must 'allege[ ] facts which, if prove[n], would entitle him to relief.' " *See Hatch v. Oklahoma,* 58 F.3d 1447, 1471 (10th Cir.1995), *cert. denied,* 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996). "[T]he allegations must be specific and particularized, not general or conclusory." *Id.*

█ The court finds that a hearing on the defendant's motion is not necessary. The files and the records in this case fully address the issues raised in the defendant's motion and conclusively show that he is not entitled to the relief he seeks. The court also finds that the defendant has not alleged specific and particularized facts

in support of his claims. A hearing is not required on the defendant's motion.

## GENERAL § 2255 STANDARDS

■ "Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." *United States v. Warner,* 23 F.3d 287, 291 (10th Cir.1994) (citation omitted). When a petitioner "fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either [1] cause excusing the procedural default and prejudice resulting from the error, or [2] a fundamental miscarriage of justice if the claim is not considered." *United States v. Cox,* 83 F.3d 336, 341 (10th Cir.1996); *see also United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

■ "A defendant may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment." *United States v. Cook,* 45 F.3d 388, 392 (10th Cir.1995) (citation omitted). Thus, "[a]n attorney's error provides cause to excuse a procedural default only if the error amounts to constitutionally ineffective assistance of counsel." *Rogers v. United States,* 91 F.3d 1388, 1391 (10th Cir.1996) (citations omitted), *cert. denied,* 519 U.S. 1134, 117 S.Ct. 1000, 136 L.Ed.2d 879 (1997).

■ Further, a claim that an indictment "fails to invoke the court's jurisdiction or to state an offense" may be heard by the court at any time during the pendency of the proceedings. Fed.R.Crim.P. 12(b)(3)(B). Such a claim may be raised for the first time in a § 2255 proceeding. *Marteney v. United States,* 216 F.2d 760, 762 (10th Cir.1954); *see also United States v. Welch,* 849 F.Supp. 5, 7 (D.Me.1994).

## INEFFECTIVE ASSISTANCE OF COUNSEL

The defendant argues that he received ineffective assistance of counsel at the pre-trial, trial, and sentencing phases of his trial. In order to demonstrate ineffective assistance of counsel, the defendant has the burden of proving two things:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For the reasons set forth below, this court finds that the defendant was not denied effective assistance of counsel within the meaning of the Sixth Amendment.

### Defendant's Statement at the KBI

■■ The defendant argues that he received ineffective assistance of counsel because his counsel had a conflict of interest in representing both the defendant and his wife during the voluntary interview conducted, at the defendant's request, by the KBI on February 10, 1999. "[T]he [defendant's] right to counsel guaranteed by the Sixth Amendment includes the 'right to representation that is free from conflicts of interest.'" *United States v. Bowie,* 892 F.2d 1494, 1500 (10th Cir.1990) (quoting *Wood v. Georgia,* 450 U.S. 261, 271, 101

S.Ct. 1097, 67 L.Ed.2d 220 (1981)). As such, "multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (citing *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). The mere "possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350, 100 S.Ct. 1708. After all, "a possible conflict inheres in almost every instance of multiple representation." *Id.* at 348, 100 S.Ct. 1708.

■ Because he failed to raise this issue at trial, the defendant must now prove "that an actual conflict of interest affected his lawyer's performance." *Bowie*, 892 F.2d at 1500 (quoting *Cuyler*, 446 U.S. at 350, 100 S.Ct. 1708) (noting that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance"). "[A]n actual conflict of interest" adversely affects a defense counsel's performance when "specific and seemingly valid or genuine alternate strateg[ies] or tactic[s]" inherently conflict. *Bowie*, 892 F.2d at 1500. In sum, "the defenses must be antagonistic to the point of being irreconcilable and mutually exclusive.... The essence or core of the defenses must be in conflict such that ... in order to believe the core of one defense [one] must necessarily disbelieve the core of the other." *United States v. Swingler*, 758 F.2d 477, 495 (10th Cir.1985) (quoting *United States v. Romanello*, 726 F.2d 173, 177 (5th Cir.1984)).

The defendant alleges that on February 10, 1999, he and his wife, Cheryl Walters, jointly consulted with counsel and sought his legal representation because the defendant had heard they were going to be indicted. (Dk.286, p. 9). After talking with their lawyer, the defendant and his wife asked their counsel to represent both

of them when they gave their respective statements at the KBI Headquarters in Topeka, Kansas, on February 10, 1999. (Dk.286, p. 6, 8). The defendant alleges their counsel did not know that he and his wife were involved in the case in different degrees because the counsel had not "reviewed the factual details with" the defendant or his wife. (Dk.286, p. 12). The defendant's brief summarizes these principal differences as he being the person who permitted Hill and Robinson to stay and as his wife being more involved with his guests, including the shopping trips, as she lived at the residence. Citing nothing but these differences, the defendant summarily asserts a conflict of interest that prevented his counsel from effectively representing both him and his wife.

■ When a court evaluates an attorney's performance, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. The court has no basis for finding that counsel represented two defendants with antagonistic defenses. To the contrary, the defendant and his wife sought counsel's help in talking to the KBI about their common defense, which was that Billy Hill and Rosan Robison had coerced their involvement and that they helped Hill only out of fear for the safety of themselves and their family. (Dk.286, p. 8, 16). The defendant concedes that his statement to the KBI did not conflict with his wife's statement in any essential way. (Dk.286, p. 7). As the United States Supreme Court has noted, using a "common defense [often] gives strength against a common attack." *Burger v. Kemp*, 483 U.S. 776, 784, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (quoting *Holloway*, 435 U.S. at 482–83, 98 S.Ct. 1173). The defendants obviously hoped to advance their common defense strategy by

appearing before the KBI with shared counsel. Because the defendant and his wife were asserting a common defense, counsel's performance could not have been adversely affected by the alleged possible conflict of interest. As such, the court finds no merit to this ineffective assistance of counsel claim.

## Defense Counsel's Failure to Investigate Facts Prior to Interview

 The defendant next argues that he received ineffective assistance of counsel because his attorney failed to investigate the factual circumstances of his involvement in the case and to ascertain what evidence the government possessed concerning his involvement prior to his interview with the KBI. The defendant "must show that the counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. The court evaluates counsel's conduct from counsel's "perspective at the time." *Id.* at 689, 104 S.Ct. 2052. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052.

The defendant offers nothing from which a court could find that a reasonable counsel would not have permitted his clients to be interviewed by the KBI until after he had investigated his clients' story or had attempted to learn the government's case. The defendant points to nothing unusual in this case that shows a reasonable counsel would have disbelieved his clients and refused their efforts to cooperate with the government until he had a chance to investigate their story and the government's case. Counsel consulted with the defendant and his wife before making arrangements at the KBI Headquarters. (Dk.286, p. 9). The defendant presents the court with no circumstances for questioning the reasonableness of counsel's advise or actions. Additionally, "a heavy measure of deference" must be applied to counsel's "particular decision not to investigate." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. Thus, the defendant has failed to show that counsel's representation fell below the objective standard of reasonableness as required under *Strickland.*

## Defense Counsel's Failure to Call Trial Witnesses

 The defendant also argues that he received ineffective assistance of counsel because his counsel failed to call witnesses at the trial which would have shown that his involvement in the case was the product of extreme duress. Counsel's decision whether or not to call particular witnesses in the instant case constitutes trial strategy, and the defendant has failed to overcome the *Strickland* presumption that it was sound. See *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (noting that "the best criminal defense attorneys would not defend a particular client in the same way"). Accordingly, the defendant has failed to demonstrate that counsel's performance was deficient, as required by *Strickland's* first prong.

 Nor has the defense shown "a 'reasonable probability' that the outcome would have been different" had his attorney called more witnesses. *Duvall v. Reynolds,* 139 F.3d 768, 777 (quoting *United States v. Haddock,* 12 F.3d 950, 955 (10th Cir.1993)), *cert. denied,* 525 U.S. 933, 119 S.Ct. 345, 142 L.Ed.2d 284 (1998). Consequently, the defendant has failed to demonstrate prejudice, as required by *Strickland's* second prong.

## Suppression of Defendant's Statement at the KBI

The defendant further argues that his trial counsel was ineffective for not seeking to suppress his KBI statement on the weight of the argument that the defendant had been denied effective assistance of counsel when he gave the statement. For the reasons stated above, the court has concluded that there was not a conflict of interest and that counsel was not ineffective in his representation of the defendant on February 10, 1999, when the defendant voluntarily submitted to the KBI's interview. Consequently, the defendant's trial counsel could not have been ineffective for failing to file a motion to suppress the defendant's statement to the KBI on those grounds.

## EVIDENCE CONCERNING BILLY HILL'S STANDOFF

■ The defendant contends he was denied a fair trial and his trial counsel was ineffective when evidence of the standoff with Billy Hill and of the physical items seized from the Wamsley property was admitted without objection by his counsel. The defendant alleges this evidence was irrelevant and unfairly prejudicial. "A motion under § 2255 ... may not be used as a substitute for appeal." *Carrillo v. United States*, 332 F.2d 202, 202 (10th Cir. 1964). Moreover, "[t]rial errors, such as the erroneous admission of evidence ... must be raised on direct appeal and do not afford a basis for collateral attack." *Id.* at 202–03. Therefore, since the defendant did not raise this issue on direct appeal, this Court will not address the merits of this issue here unless defense counsel was ineffective.

Concerning the effectiveness of defense counsel, the defendant has failed to prove that counsel's failure to object at trial or to raise this issue on appeal was unreasonable under *Strickland*. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (holding that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Other than offering his own opinion on relevance and prejudice, the defendant has not established the inadmissibility of this evidence. Indeed, the trial record confirms that the evidence of Hill's standoff and his other operations was used by the defendants to bolster their coercion defense by showing Hill to be a violent and frightening person who set up methamphetamine laboratories wherever he pleased. The defendant simply has not carried his burden of proving that he was denied effective assistance of counsel.

## IMPROPER SENTENCE BASED UPON DRUG QUANTITY

■ The defendant asserts the court based its relevant conduct findings on speculative yield calculations and wrongly relied on the same in sentencing him. The defendant objected to the yield calculations on direct appeal; however, the Tenth Circuit upheld "the district court's findings concerning the quantity of methamphetamine attributable to Mr. Walters." *United States v. Walters*, 28 Fed. Appx. 902, 908 (10th Cir.2001) (concluding that "[t]he evidence is sufficient to prove the quantity of methamphetamine involved"). Since the defendant raised this objection on direct appeal, he is procedurally barred from raising it here. *United States v. Nolan*, 571 F.2d 528, 530 (10th Cir.1978) (noting that "[a]n issue disposed of on direct appeal will ... not be reconsidered on a collateral attack by a [2255] motion [absent] an intervening change in the law of a circuit"). As a result, this court will not address the merits of this issue.

## IMPROPER SENTENCE BASED UPON DRUG TYPE

 The defendant claims his sentence was erroneously based on a Schedule II controlled substance when the jury was never asked to decide whether the methamphetamine was a controlled substance under Schedule II or Schedule III. The defendant insists there is a distinction based on whether the methamphetamine is or is not injectable. The established law in this circuit is that methamphetamine is a Schedule II controlled substance regardless of its injectability. *United States v. Zamora,* 784 F.2d 1025, 1029–30 (10th Cir. 1986) (noting that the Attorney General "promulgat[ed] changes in Schedule II, [under 21 U.S.C. § 811,] to include methamphetamine, its salts, isomers, and salts of isomers"). The defendant was not improperly sentenced based on a Schedule II controlled substance, and he did not receive ineffective assistance when his counsel neither raised this issue during trial nor on appeal.

## GOVERNMENT'S FAILURE TO INFORM GRAND JURY

 The defendant argues constitutional error resulted from the government not providing the federal grand jury with evidence of duress and coercion that was favorable to the defendant. While a prosecutor "must present evidence that clearly negates guilt," he or she "need not present all conceivably exculpatory evidence to the grand jury." *United States v. Page,* 808 F.2d 723, 727 (10th Cir.), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 683 (1987). The defendant has not come forward with proof that the government discovered substantial exculpatory evidence in their investigation relating to these defenses and then withheld the same from the grand jury. The government asserts it did not learn of these defenses until after the indictment was returned when the defendant and his wife made their statements to the KBI. Finally, since the defendant's coercion defense was unsuccessful at trial, there is little likelihood that it would have been successful in deterring a grand jury from returning an indictment based on nothing more than probable cause. *See Id.* (noting that "[i]f a petit jury has knowledge of the same misstatement made to the grand jury and nonetheless finds a defendant guilty beyond a reasonable doubt, it is unlikely that the error before the grand jury, which must find only probable cause, was prejudicial"). Accordingly, any failure by the government to inform the grand jury about the defendant's concerns for the safety of himself and his family did not amount to prejudicial error.

## LACK OF FEDERAL JURISDICTION

 The defendant complains he was singled out for federal prosecution when others were charged in state court. The defendant denies criminal activities that would implicate interstate commerce and argues that only state and local law enforcement officers were involved in the investigation. These arguments do not assert a viable constitutional claim. The defendant alleges no unlawful motive behind the filing of the federal charges. The record suggests nothing unconstitutional in the prosecutor's decision to file federal drug charges against the defendant. The court concludes the defendant's challenges to this court's jurisdiction and to the federal government's constitutional authority to prosecute him for federal drug offenses are frivolous.

## UNCONSTITUTIONAL APPLICATION OF 21 U.S.C. § 846

 The defendant asserts that 21 U.S.C. § 846 was unconstitutionally applied in this case. He challenges that no interstate nexus requirement is contained within the statute. The defendant also

argues that the government failed to prove that his activities substantially impacted interstate commerce.

"[T]he conduct regulated by … § 846 … clearly implicates interstate commerce." *United States v. Price*, 265 F.3d 1097, 1106–07 (10th Cir.2001) (quoting *United States v. Wacker*, 72 F.3d 1453, 1475 (10th Cir.1996) (noting that "Congress made explicit findings explaining the conduct's substantial and direct effect upon interstate commerce"), *cert. denied*, 519 U.S. 848, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996)) (holding that "§ 846[is] within Congress' power to regulate interstate commerce"), *cert. denied*, 535 U.S. 1099, 122 S.Ct. 2299, 152 L.Ed.2d 1056 (2002). Conspiracy to manufacture and distribute methamphetamine is, after all, economic activity by its very nature. *See Price*, 265 F.3d at 1106–07. The drug trafficking laws under 21 U.S.C. §§ 801 *et seq.* lack an express interstate commerce element, as these laws are considered to regulate a class of activities that necessarily affect interstate commerce. *United States v. Janus Industries*, 48 F.3d 1548, 1556 (10th Cir.), *cert. denied*, 516 U.S. 824, 116 S.Ct. 87, 133 L.Ed.2d 44 (1995). The indictment, therefore, need not include an interstate commerce allegation. *See United States v. Greenwood*, 189 F.3d 479, 1999 WL 728481 at *1 (10th Cir. Sept.17, 1999), *cert. denied*, 529 U.S. 1103, 120 S.Ct. 1843, 146 L.Ed.2d 786 (2000). A conviction under these drug trafficking statutes does not require individualized proof that the crime substantially affected interstate commerce. *See United States v. Lane*, 883 F.2d 1484, 1492 (10th Cir.1989), *cert. denied*, 493 U.S. 1059, 110 S.Ct. 872, 107 L.Ed.2d 956 (1990). The defendant's issue is without merit.

**DENIED RIGHT TO TESTIFY IN OWN DEFENSE**

The defendant contends that he wanted to testify but that his counsel overrode his decision, consequently denying him the right to testify in his own defense. The defendant denies knowing or being informed by his counsel or the court that he controlled the decision on whether to testify. The defendant says he had been led to believe by this counsel that the final decision on testifying was to be made by counsel. The defendant maintains he wanted the jury to hear his side of the story in which he would deny any intent to conspire to manufacture methamphetamine with Hill and Robison and would explain that any cooperation he gave to Hill resulted out of coercion and fear for the safety of himself and his family.

"[A] defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). "The decision whether to testify lies solely with the defendant." *United States v. Hollis*, 191 F.Supp.2d 1257, 1269 (D.Kan.2002) (citing *United States v. Dryden*, 1998 WL 930582, at *1 (10th Cir. Apr.22, 1998)), *aff'd*, 93 Fed. Appx. 201 (10th Cir. Mar.12, 2004). While giving advice against testifying may be appropriate trial strategy, a counsel falls short of the objective standard of reasonableness in not informing the defendant of his right to decide whether to testify. *United States v. Dryden*, 1998 WL 930582 at *1 (citing *United States v. Hershberger*, 1991 WL 136337 at *3 (10th Cir. July 24, 1991)); *see Brown v. Artuz*, 124 F.3d 73, 79–80 (2nd Cir.1997), *cert. denied*, 522 U.S. 1128, 118 S.Ct. 1077, 140 L.Ed.2d 135 (1998). The first prong of *Strickland* is met when the defendant alleges and proves his counsel failed to advise that the ultimate decision to testify resided with the defendant and the defense counsel kept the defendant from testifying despite his expressed desire to do so. *See*

*United States v. Dryden*, 1998 WL 930582 at *2.

■ The defendant Walters alleges sufficient details to justify an evidentiary hearing on the first prong, but the court need not conduct a hearing unless the defendant also comes forward with more than conclusory allegations on the second prong, that is, whether the counsel's deficient performance prejudiced the defense. *Id.* The defendant's allegations on the content of his testimony are deficient in detail and do not sustain an inference of prejudice. *See Hatch*, 58 F.3d at 1457 (noting that "conclusory allegations will not suffice to warrant a hearing"). The defendant merely alleges that in his testimony he would have denied conspiring with Hill and Robison and explained his cooperation with Hill "was the result of his fear of Billy Hill, and fear for the safety of his family." (Dk.286, pp. 25–26). The defendant does not allege the details of his possible testimony or how it would differ from the evidence presented at trial. Indeed, the jury heard various evidence on both general propositions. This evidence included the defendant's own prior recorded statement taken during the KBI interview. As mentioned earlier, the defendant voluntarily went to the KBI and submitted to a recorded interview during which he confessed his involvement in the conspiracy and asserted Hill's coercion as the reason for his involvement. In the interview, the defendant asserted he was being truthful and emphasized repeatedly that he and his wife had acted only out of fear and concern for themselves and their family. Thus, the jury essentially heard the defendant's very words regarding these matters and convicted him nonetheless. Considering the defendant's conclusory allegations of prejudice in light of the evidence offered at trial, the court concludes that the defendant is not entitled to an evidentiary hear-

ing and that the defendant has failed to show a reasonable probability that, but for counsel's alleged refusal to allow him to testify, the result of his trial would have been different.

## IMPROPER SENTENCE BASED UPON DRUG QUANTITY

The defendant claims constitutional violations in being sentenced based on 214 grams of actual methamphetamine when the indictment did not charge those facts and the jury did not decide them. The defendant also complains that his trial and appellate counsel were ineffective in not challenging jury instruction number eleven and in not arguing that the government failed to prove the larger drug quantity alleged in the indictment. Additionally, the defendant believes he is entitled to a judgment of acquittal because the government did not prove this alleged quantity of methamphetamine.

These arguments are thinly veiled recasts of the *Apprendi*[2] issues that the defendant unsuccessfully advanced on direct appeal. Thus, the defendant is procedurally barred from raising them in this proceeding. *Nolan*, 571 F.2d at 530 (noting that "[a]n issue disposed of on direct appeal will ... not be reconsidered on a collateral attack by a [2255] motion [absent] an intervening change in the law of a circuit"). The defendant offers no circumstance that would justify this court reconsidering those issues.

The defendant's counsel at trial and on appeal were not ineffective as argued now. The court's instruction to the jury was consistent with precedent controlling at the time of trial, and *Apprendi* did not change the law until after the defendant's trial. The defendant's counsel argued *Apprendi* on appeal, and the Tenth Circuit

---

**2.** *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

found no violation. The defendant offers no factual or legal basis for his ineffective assistance claims.

**IT IS THEREFORE ORDERED** that the defendant Jay Dee Walters's pro se motion pursuant to 28 U.S.C. § 2255 challenging his conviction and sentence (Dk.285) is denied.