**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 7 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

––––––––––––––––––––––––––––––

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAY DEE WALTERS,

    Defendant-Appellant.

No. 00-3307
(D. Kan.)
(D.Ct. No. 99-CR-40012)

––––––––––––––––––––––––––––––

**ORDER AND JUDGMENT**[*]

––––––––––––––––––––––––––

Before **EBEL**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HALL**,[**]
Circuit Judge.

––––––––––––––––––––––––––

INTRODUCTION

A jury convicted Jay Dee Walters of conspiracy to manufacture a mixture

containing a detectable amount of methamphetamine in violation of 21 U.S.C.

§§ 846 and 841.  The district court sentenced Mr. Walters to 121 months

––––––––––––––––––

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Cynthia Holcomb Hall, United States Circuit Judge for the
Ninth Circuit, sitting by designation.

imprisonment and five years supervised release. On appeal, Mr. Walters argues: (1) his sentence violates the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466(2000); (2) the district court erred in determining the amount of methamphetamine involved in the conspiracy and consequently misapplied the United States Sentencing Guidelines; (3) prosecutorial misconduct tainted his conviction; and (4) the district court erred in admitting polygraph evidence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1) and (2). In affirming the district court's decision, we will address each of Mr. Walters' arguments in turn.[1]

1.      *Apprendi* Error

Mr. Walters begins by challenging his sentence. He argues his sentence of five years supervised release exceeds the minimum of three years supervised release required by 21 U.S.C. § 841(b)(1)(C) and, therefore, violates *Apprendi*. Mr. Walters contends "[w]here a sentence exceeds the lowest or lowest mandatory minimum sentence for which the Defendant was indicted and convicted, the sentence must be vacated and the case remanded for sentencing." In sum, Mr. Walters believes, because the jury did not make any findings as to the amount of

_____

[1] The district court set forth the facts of this case in *United States v. Walters*, 89 F. Supp. 2d 1206, 1207-10 (D. Kan. 2000).

methamphetamine involved, the district court could not sentence him to a term of supervised release longer than the statutory minimum of three years.

We review the question of whether Mr. Walters' sentence violates *Apprendi de novo*. *United States v. Thompson*, 237 F.3d 1258, 1261 (10th Cir.), *cert. denied*, 121 S. Ct. 1637 (2001). "In *Apprendi*, the Supreme Court held that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Id*. at 1261-62 (quoting *Apprendi*, 530 U.S. at 490). We have previously held *Apprendi* requires a jury to find drug quantities if the defendant is sentenced under 21 U.S.C. § 841(b)(1)(A) or (B). *See United States v. Jones*, 235 F.3d 1231, 1236 (10th Cir. 2000). However, the district court can impose a sentence within the range allowed under 21 U.S.C. § 841(b)(1)(C) even when a jury did not make a drug quantity finding.[2] *Sanchez,*

---

[2] The structure of 21 U.S.C. § 841(b) shows why *Apprendi* is triggered by sentencing under subsections (A) and (B), but not (C). Section 841(b) establishes a tiered system of penalties for drug offenses. The length of the sentence depends on the amount of drugs involved. Section 841(b)(1)(A) and (B) enumerate specific drug quantities necessary to trigger their penalties. *See Jones*, 235 F.3d at 1236. As a result, *Apprendi* requires a jury finding as to the drug quantities. *Id*. In contrast, § 841(b)(1)(C) is the base level offense and does not specify a drug quantity. *See United States v. Sanchez*, 269 F.3d 1250 (11th Cir. 2000). Consequently, a district court can sentence a defendant under (C) without jury findings as to the drug quantity. *Id.* at 1268.

269 F.3d at 1268. Because the jury did not make any findings as to the amount of methamphetamine Mr. Walters conspired to manufacture, we must determine whether Mr. Walters' sentence is within the range allowed under § 841(b)(1)(C). This section states "[a]ny sentence imposing a term of imprisonment under this paragraph shall ... impose a term of supervised release of at least 3 years." 21 U.S.C. § 841(b)(1)(C). Because § 841(b)(1)(C) does not set a maximum term for supervised release,[3] Mr. Walters' sentence of five years supervised release was within the range allowed by § 841(b)(1)(C) and did not violate *Apprendi*. *See Thompson*, 237 F.3d 1258 (holding a five-year term of supervised release under § 841(b)(1)(C) was within the range of the statute and did not violate *Apprendi*).

Mr. Walters would have us extend *Apprendi* to require the jury to find drug quantities if the defendant receives a sentence in excess of the minimum penalty required under § 841(b)(1)(C). During oral argument, counsel for Mr. Walters repeatedly asked us to adopt the Sixth Circuit's holding in *United States v. Ramirez*, 242 F.3d 348 (6th Cir. 2001). *Ramirez* is not factually analogous to the

---

[3] In some portions of his brief, Mr. Walters argues the three year term of supervised release allowed under § 841(b)(1)(C) is the maximum term of supervised release allowed. This argument is contrary to the statutory language providing the term of supervised release is "at least 3 years." 21 U.S.C. § 841(b)(1)(C); *see United States v. Aguayo-Delgado*, 220 F.3d 926, 933 (8th Cir.) (holding the maximum sentence of supervised release under § 841(b)(1)(C) is life), *cert. denied*, 531 U.S. 1026 (2000).

-4-

case before us. In *Ramirez*, the jury did not find a specific drug quantity, but the district court sentenced the defendant to twenty years imprisonment – the minimum allowed under 21 U.S.C. § 841(b)(1)(A). *Ramirez*, 242 F.3d at 350. The district court indicated the twenty-year sentence was excessive, but required by the statute. *Id.* On appeal, the Sixth Circuit held the district court should have sentenced the defendant under § 841(b)(1)(C) because the jury had not found a specific drug quantity. *See Ramirez*, 242 F.3d at 352. In contrast, Mr. Walters' sentence of five years supervised release was not due to the district court's incorrect application of § 841(b)(1)(A) or § 841(b)(1)(B) – subsections that require proof of a specific quantity of methamphetamine. Rather, the district court correctly sentenced Mr. Walters under § 841(b)(1)(C). For this reason, we decline to apply *Ramirez*. We hold Mr. Walters' sentence of five years supervised release does not violate *Apprendi*.

2.    Determination of Drug Quantity

Mr. Walters also disputes his sentence because he believes the district court erred in determining the amount of methamphetamine involved in the conspiracy and consequently erred in applying the United States Sentencing Guidelines. Mr. Walters contends the district court (1) should have applied a standard more stringent than preponderance of the evidence in evaluating the drug quantity

evidence, (2) did not have sufficient evidence to support the amount of methamphetamine attributed to Mr. Walters, and (3) should not have relied on theoretical yields to determine the amount of methamphetamine attributable Mr. Walters.

"We review the district court's interpretation of the Sentencing Guidelines *de novo* and its factual findings for clear error. We give due deference to the district court's application of the Guidelines to the facts." *United States v. Davis*, 182 F.3d 1201, 1202 (10th Cir. 1999) (citations omitted). Under this standard of review, we affirm the district court's decision.

A.     Preponderance of Evidence Standard

Initially, Mr. Walters urges us to discard the preponderance of the evidence standard and adopt the heightened evidentiary standard for determining drug quantities as outlined by the Ninth Circuit in *United States v. Scheele*, 231 F.3d 492 (9th Cir. 2000). In *Scheele*, the court held "the Due Process Clause requires the application of a clear and convincing evidence standard when an enhancement based upon uncharged conduct has an extremely disproportionate effect on the length of a defendant's sentence." *Id*. at 498 (quotation marks and citation omitted).

We considered and rejected a similar argument in *United States v. Washington*, 11 F.3d 1510, 1515-16 (10th Cir. 1993), *cert. denied*, 511 U.S. 1020 (1994). In *Washington*, the defendant argued "because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required." *Id*. at 1515. Although "[w]e recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," we held Tenth Circuit precedent precluded the court from adopting a "higher than a preponderance standard" when making calculation under the Sentencing Guidelines. *Id*. at 1516; *see also United States v. Segien*, 114 F.3d 1014, 1020 (10th Cir. 1997) ("[W]e have repeatedly held proof of drug quantities resulting in vastly increased sentences via the Sentencing Guidelines ... need only be by a preponderance of the evidence."), *cert. denied*, 523 U.S. 1024 (1998). We are similarly restrained from adopting a new standard of proof. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) ("We cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."), *cert. denied*, 513 U.S. 807 (1994). Consequently, we conclude the district court properly applied the preponderance of evidence standard for determining the quantity of methamphetamine involved.

B.    Sufficiency of the Evidence

Next, Mr. Walters argues that even if the preponderance of evidence standard is used, there is not sufficient evidence to prove the quantity of methamphetamine involved.  In order to calculate the amount of methamphetamine Mr. Walters conspired to manufacture, the district court estimated the amount of methamphetamine that could have been manufactured given the amount of various ingredients Mr. Walters and his wife purchased.  Mr. Walters contends the court erred in (1) considering co-conspirator statements, (2) attributing methamphetamine ingredients purchased by other co-conspirators to Mr. Walters, and (3) using a ninety percent yield ratio to determine the amount of methamphetamine Mr. Walters could have manufactured from the ingredients attributed to him.

We review a district court's calculation of drug quantities as a finding of fact that we will uphold unless clearly erroneous.  *United States v. Green*, 175 F.3d 822, 836-37 (10th Cir.), *cert. denied*, 528 U.S. 852 (1999).  We review the court's interpretations of law and application of the Sentencing Guidelines *de novo*.  *United States v. Wacker*, 72 F.3d 1453, 1477 (10th Cir. 1996).  "The sentencing court may estimate [drug] quantities attributable to the defendant, so long as the information relied upon has 'some basis of support in the facts of the

particular case' and bears 'sufficient indicia of reliability.'" *Id.* (citation omitted).

Mr. Walters argues "the only evidence to create any amount of drug quantity is [an unindicted co-conspirator], but [he] could not be cross-examined and he was heavily using drugs during the time [of the conspiracy]." Thus, Mr. Walters believes the co-conspirator's statements were unreliable and should not have been considered. We have previously held a district court can consider a co-conspirator's statements in determining the appropriate sentence, provided the statements contain sufficient indicia of reliability. *United States v. Moore*, 55 F.3d 1500, 1501-02 (10th Cir. 1995); *United States v. Roach*, 978 F.2d 573, 575-76 (10th Cir. 1992). Although Mr. Walters contends there is no other evidence to corroborate the co-conspirator's statements, in fact, the evidence of the drug quantities is supported by Mr. Walters' own statements. As the district court explained, "[Mr. Walters] told the government that he and his wife did 'grocery shopping' for [the co-conspirator] and admitted purchasing starting fluid, antihistamine pills, liquid heat, lithium batteries and rock salt." In addition, Mr. Walters admitted he knew co-conspirators were manufacturing methamphetamine

with the items Mr. Walters and his wife purchased.[4] Because the co-conspirator's statements were corroborated by Mr. Walters' statements, we conclude the district court properly considered the co-conspirator's statements.

Mr. Walters next argues that because he shopped for methamphetamine ingredients on only a couple of occasions, the district court should only have attributed a small amount of methamphetamine ingredients to him. Mr. Walters' argument ignores the well-settled principle that "in the case of a conspiracy, a defendant is accountable for the conduct of others that is within the scope of his agreement and reasonably foreseeable by him." *Green*, 175 F.3d at 837. The district court found Mr. Walters "knew [a co-conspirator] was manufacturing methamphetamine at the Walters' residence ... and that [Mr. Walters] knowingly purchased or stole [methamphetamine ingredients] along with his wife ... to assist [the co-conspirator] in manufacturing methamphetamine." The district court therefore concluded "it is appropriate to include the precursors purchased by the defendant's wife in the calculated amount of methamphetamine attributable to the

---

[4] Mr. Walters did not object when these facts were described in the Presentence Investigation Report. When a defendant does not object to a fact in a Presentence Investigation Report, the defendant is generally considered to have admitted the fact for sentencing purposes. *See United States v. Shinault*, 147 F.3d 1266, 1277-78 (10th Cir.), *cert. denied*, 525 U.S. 988 (1998).

-10-

defendant." The district court's conclusion is supported by Mr. Walters' statements to the government regarding his wife's shopping trips. Consequently, we affirm the district court's conclusion that methamphetamine ingredients Mrs. Walters purchased should be attributed to Mr. Walters.

Mr. Walters also argues because he was using "'shake and bake cook' the most unreliable method of cooking [methamphetamine]" the court should have figured the amount of methamphetamine manufactured would be twenty-five percent of the weight of the ingredients used to manufacture the methamphetamine. Rather than using the twenty-five percent advocated by Mr. Walters, the district court used a ninety percent yield. The district court based its use of the ninety percent yield on Kansas Bureau of Investigation Forensic Scientist James Schiefereck's testimony. Mr. Schiefereck testified the theoretical yield of a different methamphetamine laboratory operated by Mr. Walters' co-conspirator was "well over 90 percent" and described the laboratory as "the best setup [he had] ever seen." In his brief on appeal, Mr. Walters appears to argue the methamphetamine laboratory on his property was not as sophisticated as the other laboratory operated by his co-conspirator. However, Mr. Walters did not present any testimony either at trial or at sentencing to support his argument. We therefore conclude the district court was not clearly erroneous in using a ninety

percent theoretical yield to determine the amount of methamphetamine Mr. Walters conspired to manufacture.

In sum, we conclude the district court's findings concerning the quantity of methamphetamine attributable to Mr. Walters were not clearly erroneous. The evidence is sufficient to prove the quantity of methamphetamine involved by a preponderance of the evidence.

C.     Theoretical Yield

Mr. Walters also objects to the use of a theoretical yield concept used in the Presentence Investigation Report to calculate the amount of methamphetamine attributable to him, calling such calculations "voodoo criminology." Mr. Walters did not object to the use of a theoretical yield concept until after the completion of the Addendum to the Presentence Investigation Report. Mr. Walters first raised his objection to the calculations in a sentencing memorandum when he referred to the calculations as "tortured."[5]

---

[5] The Presentence Investigation Report was completed March 21, 2000. The Addendum to the report was completed June 30, 2000. Mr. Walters did not object to the use of the theoretical yield calculations until August 31, 2000. The district court sentenced Mr. Walters on September 6, 2000.

The district court ruled "[a]s to any objection to the theoretical yield calculations used in the [Presentence Investigation Report], the court finds such objections to be untimely pursuant to Rule 32(b)(6)(B) and (D) of the Federal Rules of Criminal Procedure." Rule 32(b)(6)(D) allows the district court to entertain a new objection at any time before sentencing if the objector shows good cause. Fed. R. Crim. P. 32(b)(6)(D). However, the district court is not required to hear an objection to the Presentence Investigation Report if the objection is not raised within fourteen days of counsel's receipt of the report. *See* Fed. R. Crim. P. 32(b)(6)(B), (D); *United States v. Hardwell*, 80 F.3d 1471, 1500 (10th Cir. 1996). We leave the decision about whether to hear the new objection to the sound discretion of the district court. *United States v. Archuleta*, 128 F.3d 1446, 1452 n.12 (10th Cir. 1997). We conclude the district court did not abuse its discretion in declining to accept Mr. Walters' objection to the theoretical yield calculation.

3.     Prosecutorial Misconduct

In addition to challenging his sentence, Mr. Walters also disputes the validity of his conviction. He argues the district court erred by not granting a mistrial or new trial to remedy two instances of prosecutorial misconduct. Mr. Walters first argues the prosecutor violated the district court's ruling on a motion

-13-

*in limine* when he allowed a witness to testify about Mr. Walters' prior drug activity. Second, Mr. Walters contends the prosecutor made an improper comment during closing arguments.

We review the district court's denial of a motion for mistrial or new trial based on prosecutorial misconduct for abuse of discretion. *See United States v. Gabaldon*, 91 F.3d 91, 94 (10th Cir. 1996). "We engage in a two-step process in reviewing claims of prosecutorial misconduct. First, we determine if the conduct was improper. Second, we determine if any improper conduct warrants reversal." *United States v. Gordon*, 173 F.3d 761, 769 (10th Cir.) (citation omitted), *cert. denied*, 528 U.S. 886 (1999).

A.    Violation of Motion *in Limine* Ruling

The first instance of alleged prosecutorial misconduct occurred when the prosecutor was questioning Special Agent Hupp regarding interviews with Mr. Walters. In attempting to elicit testimony that Mr. Walters had contact with a co-conspirator's family members prior to the conspiracy, the prosecutor asked Agent Hupp about Mr. Walters' statements concerning a co-conspirator's nephew. Agent Hupp testified Mr. Walters "suspected [the nephew] of ripping off some cultivated marijuana plants on his property." At the close of testimony on the day

-14-

Agent Hupp testified, counsel for Mr. Walters made an oral motion requesting a mistrial on the grounds that Agent Hupp's testimony was prejudicial and violated the district court's prior ruling on a motion *in limine*. The ruling on the motion *in limine* instructed counsel to approach the bench before introducing evidence concerning Mr. Walters' past dealings with the co-conspirator.

In denying Mr. Walters' oral request for a mistrial, the district court first noted the prosecutor "should have informed the witness not to ... answer in that way as to the marijuana." However, the district court found the prosecutor's misconduct was not sufficient to justify granting a mistrial. After the jury returned a verdict, Mr. Walters renewed his objection to the prosecutor's conduct by filing a Motion for Judgment of Acquittal, or, in the Alternative, for a New Trial. The district court denied the motion noting "the transgression was minor and inconsequential in the context of this trial," and "given the weight of the evidence against the defendant, this evidence, even if it should have been excluded, did not deprive the defendant of a fair trial." *Walters*, 89 F. Supp. 2d at 1214. We conclude the district court throughly reviewed the motions and did not abuse its discretion in denying Mr. Walters' requests for a mistrial and new trial.

B.      Closing Statement

The second instance of alleged prosecutorial misconduct occurred during closing statements. Mr. Walters argues "the prosecutor stated words to the effect that 'since the Grand Jury indicted the Defendant that [the jury] should take that into consideration in reaching their verdict.'" In reality, the prosecutor's statement was much less egregious. During closing arguments, counsel for Mr. Walters' wife, a co-defendant, argued Mrs. Walters had "been victimized twice, the first time by [a co-conspirator] and again by being accused of conspiring with him and harboring him." In response, the prosecutor argued "[t]he grand jury did not revictimize these defendants by indicting them on these charges."

Mr. Walters did not contemporaneously object to the prosecutor's statement. Mr. Walters' first mention of the prosecutor's statement was in the district court's chambers while the jury was deliberating. At that time, counsel for Mr. Walters requested that the district court review the transcript of the closing argument and possibly give an additional jury instruction. The district court denied the request. Mr. Walters again questioned the propriety of the prosecutor's statement in his Motion for Judgment of Acquittal, or, in the Alternative, for a New Trial.

In denying Mr. Walters' motion for a new trial, the district court noted

-16-

"'[p]rosecutors have considerable latitude to respond to an argument made by opposing counsel.'" *Walters*, 89 F. Supp. 2d at 1214 (quoting *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1012 (10th Cir. 1999)). The court found, although the prosecutor "would arguably have been better served to have eschewed any suggestion that the grand jury's return of a superseding indictment was in some way vindicated by the evidence presented," the comment "directly responded to the defendants' arguments and in its context was not improper." *Id.* at 1215. To mitigate any potential prejudicial effect, the district court "repeatedly instructed the jury that the superseding indictment is merely a charge." We affirm the district court's well-reasoned decision.

4.      Polygraph Evidence

Finally, Mr. Walters argues the district court erred in "permitting polygraph evidence to enter into the case." After conducting a hearing to assess the admissibility of the polygraph evidence, the district court allowed a Kansas Bureau of Investigation polygraph examiner to testify regarding a polygraph test he performed on Mr. Walters. The court also admitted a report the examiner prepared. Mr. Walters contends polygraph evidence is inherently unreliable and, therefore, should not have been admitted. The district court determined Fed. R. Evid. 702, 703, and 403 governed the admissibility of polygraph evidence in this

case. *Walters*, 89 F. Supp. 2d at 1209. We conclude the district court properly admitted the polygraph evidence under these rules.

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. Fed. R. Evid. 702 (1999) (amended 2000). Rule 703 governs the facts or data an expert may rely upon in forming his opinion. Fed. R. Evid. 703 (1999) (amended 2000). *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), outlines the framework a district court should use in determining whether to admit evidence under Rule 702.

> Under *Daubert*, courts measure reliability of scientific evidence by considering (1) whether the technique can and has been tested; (2) whether the technique has been subjected to peer review; (3) the known or potential error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has gained general acceptance in the scientific community.

*United States v. Call*, 129 F.3d 1402, 1404 (10th Cir. 1997) (citing *Merrell Dow*, 509 U.S. at 593-95), *cert. denied*, 524 U.S. 906 (1988). Rule 703 allows an expert to base his testimony on facts or data "of a type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703 (1999) (amended 2000). "We review *de novo* whether the district court properly followed the framework set forth in *Daubert*." *Call*, 129 F.3d at 1405 (citation omitted). If, however, the district court correctly applied the *Daubert* standards, we may reverse only if we

find the district court abused its discretion. *Id.*

In determining whether to allow the polygraph testimony, the district court held a hearing outside of the presence of the jury. Kansas Bureau of Investigation polygraph examiner George Johnson testified at the hearing. The district court found:

> [Mr. Johnson] was able to articulate with sufficient precision the reasons supporting his opinion that the polygraph examination administered to Jay Dee Walters was reliable. The polygraph examiner was also able to explain in substantial detail the manner in which the polygraph examination worked, the manner in which this examination had been verified by Jay Dee Walters' post-examination interview, and the peer scrutiny to which that examination had been subjected and deemed reliable. Johnson also explained that polygraph examination similar to the one he performed on Jay Dee Walters have empirically been proved reliable.

*Walters*, 89 F. Supp. 2d at 1208-09. Mr. Walters did not present any testimony to refute Mr. Johnson's testimony. Consequently, the district court was satisfied the polygraph evidence was admissible under *Daubert* and Rules 702 and 703. *Id.* at 1209. We conclude the district court properly applied the *Daubert* framework and affirm the district court's decision to allow the polygraph evidence under Rules 702 and 703.

The district court then determined whether the polygraph evidence would be unduly prejudicial and thus warrant exclusion under Fed. R. Evid. 403. *Id.* at

-19-

1209.  Rule 403 gives the district court discretion to exclude any evidence it determines is more prejudicial than probative.  Fed. R. Evid. 403; *United States v. Espinoza*, 244 F.3d 1234, 1239 (10th Cir. 2001) ("We review for abuse of discretion a [district] court's ruling under Rule 403.").

The district court concluded the polygraph evidence was not more prejudicial than probative.  The court noted Mr. Walters stipulated to admission of the polygraph results before he submitted to the polygraph.  *Walters,* 89 F. Supp. 2d at 1209 (citing *United States v. Gilliard*, 133 F.3d 809, 812 (11th Cir. 1998) ("[A] district court can admit polygraph evidence ... when the parties stipulate in advance as to the circumstances of the test and as to the scope of its admissibility.")).  In addition, the district court drafted a lengthy jury instruction designed to prevent the jurors from giving undue weight to the polygraph results. We are satisfied the district court, on the facts of this case, did not abuse its discretion in allowing the polygraph evidence under Fed. R. Evid. 403.

CONCLUSION

We **AFFIRM** Mr. Walters' conviction and sentence.


        **Entered by the Court:**

        **WADE BRORBY**
        United States Circuit Judge