**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 18, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

 Plaintiff-Appellee,

v.

JAY DEE WALTERS,

 Defendant-Appellant.

No. 04-3273
(D.C. No. 02-CV-3409-SAC)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **PORFILIO,** and **BRORBY**, Circuit Judges.


 After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

 In 1999, Petitioner Jay Dee Walters ("Jay Dee" or "Mr. Walters") and his

wife, Cheryl Walters, were indicted on various drug-related offenses. At their

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

trial, the jury deadlocked on the charges against Cheryl but convicted Jay Dee on one of the counts returned in the superseding indictment: conspiracy to manufacture and distribute in excess of one kilogram of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841 and 846. However, the jury did not make a finding as to the specific drug quantity involved in the offense. Applying a "theoretical yield" calculation at sentencing, the district court determined that 214 grams of methamphetamine could have been manufactured given the estimated amount of precursors that Mr. Walters and his wife had purchased for use by other members of the conspiracy in the manufacturing process. The district court sentenced Mr. Walters to 121 months' imprisonment and a five-year term of supervised release under § 841(b)(1)(C) and the United States Sentencing Guidelines ("Federal Guidelines"). A panel of this court affirmed the conviction and sentence on direct appeal on December 7, 2001. *See United States v. Walters*, 28 Fed. Appx. 902 (10th Cir. 2001) (unpublished).

Although Mr. Walters did not file a petition for a writ of certiorari with the Supreme Court, he did file a timely motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The district court denied the motion but granted him a certificate of appealability ("COA") on issues numbered five, seven, and twelve in his COA application. In addition to these three issues, he

-2-

has filed a renewed application for a COA in this court on nine other issues ("Renewed COA Application"). Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we AFFIRM the denial of his § 2255 motion. We also GRANT his motion to proceed in forma pauperis and DENY his Renewed COA Application and his other pending motions.

## I.     General Legal Standards and Standards of Review.

A COA is a jurisdictional prerequisite to our review. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Accordingly, we may consider only the issues certified by the district court in its order granting a COA, plus any issues on which we grant a COA.

"[W]e review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error." *United States v. Pearce*, 146 F.3d 771, 774 (10th Cir. 1998). "Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255." *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989). The intervening change in the law must be retroactively applicable to cases on collateral review. *See United States v. Price*, 400 F.3d 844, 845 (10th Cir.) (denying petition for rehearing on ground that an intervening change in the law by the Supreme Court was not retroactively applicable to an initial § 2255 motion), *cert. denied*, 126 S. Ct. 731 (2005).

A petitioner also is barred from raising an issue in a § 2255 motion that he failed to raise on direct appeal "unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996). The procedural default rule does not apply to claims of ineffective assistance of counsel regardless of whether the claim could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Thus, "[a] defendant may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment." *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995).

To establish that counsel was ineffective, "a defendant must show that (1) his counsel's performance was constitutionally deficient, and (2) counsel's deficient performance was prejudicial." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish the first component, deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. We "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To establish the second component, prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The *Strickland* standard applies equally to ineffective assistance claims concerning trial and appellate counsel.  *Cook*, 45 F.3d at 392.  "[I]n analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, we look to the merits of the omitted issue." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (quotation omitted).  The omission of a meritless issue does not constitute deficient performance.  *Id*.  "Whether a petitioner's claim satisfies *Strickland's* two-part test is a mixed question of law and fact we review de novo." *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002).

"The incarceration of one actually innocent of the crime of which he has been convicted constitutes a grave miscarriage of justice." *United States v. Cervini*, 379 F.3d 987, 991 (10th Cir. 2004).  "There must be a showing that no reasonable juror would have found the defendant guilty." *Id.* (quotation omitted).

Because Mr. Walters appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

## II.    Issues Presented in the District Court's COA.

The district court certified three of the issues Mr. Walters presented in his application for a COA: (1) counsel was ineffective by not arguing on direct appeal that the government's failure to prove the amount of methamphetamine charged in the indictment, in excess of one kilogram, violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), particularly in view of *Blakely v. Washington*, 542 U.S. 296 (2004);[1] (2) Mr. Walters' Fifth Amendment due process rights and his Sixth Amendment right to a jury trial were violated under *Apprendi* and *Blakely* because the district court made drug quantity findings instead of the jury; and (3) his Fifth Amendment right to due process and his Sixth Amendment rights to notice of the nature and cause of the accusations against him and to a jury trial were violated under *Apprendi* and *Blakely* because the indictment did not charge the proper weight and the jury was not instructed to make a factual finding as to drug quantity in its verdict.[2]

---

[1]     In his application for a COA, Mr. Walters did not rely on *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), as the Supreme Court decided *Booker* after the district court ruled on the application. However, Mr. Walters addresses *Booker* in his briefs on appeal, and we consider it below.

[2]     We note that, as stated in Mr. Walters' § 2255 motion and his application for a COA, the second and third issues certified for appeal were not clearly couched in terms of ineffective assistance of counsel. However, because they involve variants of the first issue, which clearly alleges ineffective assistance of counsel, we will consider the second and third issues to include a claim of ineffective assistance of appellate counsel.

The district court considered these issues to be "thinly veiled recasts of the *Apprendi* issues that the defendant unsuccessfully advanced on direct appeal" and procedurally barred. R., Vol. I, doc. 307 at 24. The *Apprendi* argument raised on direct appeal concerned whether, in the absence of a jury finding as to drug quantity, the district court could impose a term of supervised release of five years when 21 U.S.C. § 841(b)(1)(C) provided for a minimum term of three years. *Walters*, 28 Fed. Appx. at 904. We concluded that *Apprendi* did not prevent the district court from imposing the five-year term because the statute provided no maximum term. *Id.* at 904-05. Although the reasoning we applied to that issue compels the same conclusion on the *Apprendi* issues that form the predicate for the ineffective assistance of counsel claims the district court certified, the *Apprendi* issue raised on direct appeal is different from the *Apprendi* issues raised in the § 2255 motion. Nevertheless, the new *Apprendi* issues are procedurally barred because they could have been raised on direct appeal but were not. We now turn to Mr. Walters' attempt to overcome the procedural bar by alleging ineffective assistance of counsel.

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

doubt." *Apprendi*, 530 U.S. at 490. Prior to the date on which Mr. Walters'

conviction became final, this circuit interpreted *Apprendi* as follows:

> [T]he quantity of drugs involved in a violation of § 841 is an
> essential element of the offense if that fact exposes the defendant to
> a heightened maximum sentence under § 841(b)(1)(A) or (B). A
> district court may not impose a sentence in excess of the maximum
> set forth in 21 U.S.C. § 841(b)(1)(C) unless the benchmark quantity
> . . . for an enhanced penalty is alleged in the indictment in addition to
> being submitted to the jury and proven beyond a reasonable doubt.

*United States v. Jones*, 235 F.3d 1231, 1236 (10th Cir. 2000). The corollary of

this statement is that the quantity of drugs involved in a violation of § 841 is not

an essential element of the offense if a district court imposes a sentence that does

not exceed the maximum set forth in § 841(b)(1)(C), which does not require any

minimum quantity as a predicate for sentencing. *Cf. United States v. Thompson*,

237 F.3d 1258, 1262 (10th Cir. 2001) (holding that, "because the indictment set

forth all the necessary elements of a crime as defined by 21 U.S.C. § 841(a) and

21 U.S.C. § 846, and because the minimum statutory range [of § 841(b)(1)(C)]

. . . does not specify a drug amount, neither the indictment [which did not specify

any drug quantity] nor the conviction was defective" under *Apprendi*). Thus,

under *Apprendi*, a jury could determine that a defendant is guilty of a violation of

§ 841(a) even if the jury is unable to find a specific quantity or finds a quantity

less than that charged in the indictment. The district court then could impose any

sentence in accordance with the Federal Guidelines provided that the sentence did

not exceed the applicable statutory maximum set forth in § 841(b)(1)(C). This is what happened in Mr. Walters' case.

In *Blakely*, the Supreme Court considered the sentencing scheme of the state of Washington and held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303. After the district court issued its COA in this case, the Supreme Court extended the rule in *Blakely* to the Federal Guidelines. *See United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 755 (2005). The Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756.

*Blakely* and *Booker*, however, have no effect on *Apprendi* for purposes of Mr. Walters' § 2255 motion. Neither case applies retroactively to initial § 2255 motions that challenge convictions that became final prior to the effective dates of those cases. *See United States v. Bellamy*, 411 F.3d 1182, 1184 (10th Cir. 2005); *Price*, 400 F.3d at 849. After we decided his direct appeal on December 7, 2001, Mr. Walters did not file a petition for a writ of certiorari. Therefore, his conviction became final ninety days later, on March 7, 2001, long before June 24,

2004, the effective date of *Blakely*, or January 12, 2005, the effective date of *Booker*. *See Price*, 400 F.3d at 846 (setting out method to determine finality of conviction for retroactivity purposes); Sup. Ct. R. 13.1. (providing a ninety-day period for filing a certiorari petition).

We are unpersuaded by Mr. Walters' argument that *Blakely* and *Booker* merely clarified *Apprendi* such that their retroactive applicability is irrelevant to his § 2255 motion. *Blakely* created a new procedural rule. *Price*, 400 F.3d at 846. Because that rule is inapplicable to Mr. Walters' § 2255 motion, *id.* at 845, his conviction and sentence do not violate *Apprendi*. Additionally, Mr. Walters relies mistakenly on *United States v. Arras*, 373 F.3d 1071 (10th Cir. 2004), and *United States v. Jackson*, 240 F.3d 1245 (10th Cir. 2001), *overruled on other grounds by United States v. Prentiss*, 256 F.3d 971, 981 (10th Cir. 2001) (en banc) (per curiam). In each of those cases, we held that, under *Apprendi*, drug quantity must be charged in the indictment if the court applies one of the enhanced sentences of § 841(b)(1)(A) or (B). *Arras*, 373 F.3d at 1074; *Jackson*, 240 F.3d at 1248. Those cases did not involve a sentence under § 841(b)(1)(C).

Accordingly, because there is no merit to Mr. Walters' underlying arguments concerning the drug quantity charged in the indictment and the fact that the district court determined drug quantity rather than the jury, we conclude that counsel's failure to raise these issues on direct appeal was not deficient

performance, *see Cargle*, 317 F.3d at 1202.  For the same reason, it was not error for the district court to fail to instruct the jury to make a drug quantity finding, and counsel's failure to raise that issue on direct appeal likewise is not deficient.

We also conclude that Mr. Walters' Sixth Amendment right to notice of the nature and cause of the accusations against him was not violated by the difference between the drug quantity charged in the indictment, in excess of one kilogram, and the quantity the district court ultimately calculated, 214 grams.  "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense."  *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997).  As we have concluded that drug quantity was not an element of the offense in this case, the indictment satisfied the Sixth Amendment.[3]

For the foregoing reasons, we affirm the district court's denial of Mr. Walters' § 2255 motion on the issues certified for appeal.

---

[3]	We have also considered Mr. Walters' "Memorandum of Fact to Clarify Record," in which he argues, inter alia, that the direct appeal panel erred in its consideration of the district court's ruling that his objections to the use of a "theoretical yield" concept in calculating drug quantity were untimely.  Ignoring the procedural infirmities of this filing and assuming Mr. Walters is correct that his objections were timely filed, we see no prejudice in the direct appeal panel's determination.  That panel considered the gravamen of the objection he discusses in the memorandum of fact, that the information on which the theoretical yield was based was itself flawed, and rejected it.  *Walters*, 28 Fed. Appx. at 907.

**III. Issues Presented in Mr. Walters' Renewed COA Application.**

We review Mr. Walters' Renewed COA Application in order to determine if he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, he "must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the [§ 2255] petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (first alteration in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (further quotation omitted). When a district court denies a § 2255 motion on procedural grounds and does not reach the underlying constitutional claim, a petitioner must show that it is reasonably debatable "whether the petition states a valid claim of the denial of a constitutional right and . . . whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Additionally, "we may deny a COA if there is a plain procedural bar to habeas relief, even though the district court did not rely on that bar." *Davis v. Roberts*, 425 F.3d 830, 834 (10th Cir. 2005).

Although Mr. Walters is not required to prove the merits of the case in order to obtain a COA, he "must prove something more than the absence of frivolity or the existence of mere good faith." *Miller-El*, 537 U.S. at 338 (quotations omitted). In evaluating whether he has satisfied his burden, we

perform "an overview of the claims . . . and a general assessment of their merits. . . . This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id.* at 336.

The first two issues Mr. Walters raises in the Renewed COA Application are related: whether counsel rendered ineffective assistance by representing both Mr. Walters and his wife, Cheryl, when they gave voluntary statements to the Kansas Bureau of Investigation ("KBI"), and by failing to investigate facts prior to permitting the interview.[4] The district court concluded that there was no conflict because Mr. Walters and his wife shared a common coercion defense and their statements did not conflict, and Mr. Walters provided no evidence showing why counsel should have advised them not to cooperate with the KBI until he had a chance to investigate.

---

[4] Both Jay Dee and Cheryl were represented by the same attorney prior to and at their trial. In his applications for a COA, Mr. Walters asserts that a conflict of interest prevented counsel from calling Cheryl as a witness at trial to offer evidence that would buttress the coercion defense or downplay Jay Dee's role in the conspiracy. He also asserts that the admission of Cheryl's recorded statement violated his Sixth Amendment confrontation clause rights because she did not testify. However, he did not present these arguments to the district court in his § 2255 motion. Therefore, we do not consider them. *See United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002) (applying "the general rule that we do not address arguments presented for the first time on appeal" to an appeal from the denial of a § 2255 motion).

-13-

When, as here, a defendant does not raise a potential conflict of interest in the trial court, the mere possibility of conflict is insufficient to reverse a criminal conviction; the defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). "'[U]ntil . . . a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.'" *Mickens v. Taylor*, 535 U.S. 162, 175 (2002) (quoting *Cuyler*, 446 U.S. at 350). "[T]o demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party." *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998) (quotation omitted). "Without a showing of inconsistent interests, any alleged conflict remains hypothetical, and does not constitute ineffective assistance." *Id.*

Mr. Walters argues that his interests diverged from Cheryl's interests because he allegedly had a lower level of involvement in the conspiracy than she did. He also argues that the coercion defense was "invalid otherwise the jury would have 'hung' as to the petitioner as well." Renewed COA Application at 3. These arguments are unpersuasive. Even assuming that Cheryl was more involved than Jay Dee, their interests were aligned in admitting to their respective levels of involvement and presenting the coercion defense. Mr. Walters has pointed to no

-14-

specific instances of conduct by counsel that suggest the decision to present a unified defense during the KBI interview was encumbered by a conflict of interest.  Therefore, he has not demonstrated an actual conflict that affected his lawyer's performance.

Mr. Walters also argues that, prior to his KBI interview, he met with his attorney and explained his version of the facts.  He contends that counsel's failure to investigate further prior to advising him to admit criminal conduct to the KBI and pursue a coercion defense constitutes ineffective assistance of counsel.  As noted in *Strickland*:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . .  [W]hen the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether.  And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Strickland*, 466 U.S. at 691.  Notably, Mr. Walters has not provided any of the substance of the discussion he had with his attorney.  Nor has he indicated what information his attorney might have discovered or explained how such information would have led to different advice.  We conclude that Mr. Walters has provided nothing that causes us to question the "strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, or that warrants further proceedings.

The third and fifth issues Mr. Walters raises are related: whether trial counsel was ineffective in failing to object to the admission of evidence, in particular evidence of a "stand off" with Billy Hill (a member of the conspiracy who allegedly coerced Mr. Walters into participating) on the so-called "Wamsley property" and of a methamphetamine lab found there. Mr. Walters claims this evidence is irrelevant because he had nothing to do with the Wamsley operations. He also asserts that counsel was ineffective for failing to raise the issues on appeal. We agree with the district court that the underlying evidentiary issues are procedurally barred because he should have raised them on direct appeal. We also conclude that the issues lack merit. The evidence was relevant to Mr. Walters' role in the conspiracy because "[a] defendant need not have knowledge of all the details or all the members of the conspiracy and may play only a minor role in the conspiracy to incur liability." *United States v. Mendoza-Salgado*, 964 F.2d 993, 1005 (10th Cir. 1992) (quotation omitted). Accordingly, any objection, and any appeal from the admission of such evidence, would have been without merit. Therefore, counsel's performance was not deficient.

Mr. Walters' fourth issue is that trial counsel was ineffective because he did not permit Mr. Walters to testify at trial, allegedly misinforming him that the decision was counsel's to make, not Mr. Walters' decision. The district court ruled that Mr. Walters alleged sufficient details on the first prong of the *Strickland* test to justify an evidentiary hearing but that none of his allegations showed prejudice. The court noted that he provided only conclusory allegations about what his testimony would have been, and the jury heard evidence on coercion, including Mr. Walters' own recorded statement to the KBI that he was coerced. For substantially the same reasons, we agree with the district court that Mr. Walters' fourth issue lacks merit. Accordingly, counsel was not ineffective in failing to raise it on direct appeal.

In his sixth issue, Mr. Walters contends that his sentence violated the Sixth Amendment under *Apprendi* because it was based on classifying the methamphetamine at issue under Schedule II (which is set forth in 21 U.S.C. § 812(c)) without it being charged as a Schedule II drug in the indictment and without a finding by the jury that it was injectable. The district court considered the merits of this claim and, relying on *United States v. Zamora*, 784 F.2d 1025 (10th Cir. 1986), concluded the law is clearly established that methamphetamine is a Schedule II drug regardless of its injectability.

We conclude that this issue is procedurally barred because it should have been raised on direct appeal. The default cannot be excused as either ineffective assistance of counsel or a fundamental miscarriage of justice because Mr. Walters' argument has no merit under *Zamora*, where we noted that methamphetamine was reclassified as a Schedule II drug in 1971:

> 21 U.S.C. § 811 . . . grants broad power to the Attorney General to transfer drugs between schedules if he finds potential for abuse and makes certain other findings. Pursuant to the aforesaid section, the Attorney General did promulgate changes in Schedule II, to include methamphetamine, its salts, isomers, and salts of isomers. 21 C.F.R. § 1308.12.

*Zamora*, 784 F.2d at 1030. Other courts have reached the same conclusion. *See, e.g., United States v. Macedo*, 371 F.3d 957, 962 (7th Cir. 2004); *United States v. Gori*, 324 F.3d 234, 240 (3d Cir. 2003); *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994); *United States v. Kendall*, 887 F.2d 240, 241-42 (9th Cir. 1989) (per curiam).

Mr. Walters' seventh issue is that the government failed to inform the grand jury of mitigating evidence concerning statements made by Mr. Walters and his wife about Billy Hill's violent proclivities. The district court noted the government's position that it was not aware of the coercion defense until Mr. Walters and his wife made their statements to the KBI, which was after the grand jury returned the indictment. The court concluded Mr. Walters had not supplied any proof that the government discovered any substantial exculpatory

-18-

evidence and withheld it from the grand jury. The court also noted that, because

Mr. Walters' coercion defense was unsuccessful at trial under a reasonable doubt

standard, there is little chance the defense would have deterred the grand jury

from returning an indictment under the probable cause standard. For substantially

the same reasons, we agree that there is no merit to this argument.

The eighth issue Mr. Walters raises is that his trial in federal court was an

abuse of prosecutorial discretion because the principal conspirators, who

allegedly had much greater involvement in the conspiracy, were tried in state

court. He also alleges that the court lacked jurisdiction over him because his role

in the conspiracy had no link to interstate commerce. The district court concluded

that Mr. Walters failed to state a viable constitutional claim on either ground

because he asserted no improper purpose on the part of the prosecutor in filing the

federal claim and his jurisdictional argument was frivolous. For substantially the

same reasons, we agree that Mr. Walters' arguments have no merit.

In his ninth and final issue, Mr. Walters challenges the constitutionality of

21 U.S.C. §§ 841(a)(1) and 846, both as applied and facially, because his conduct

in the conspiracy did not affect interstate commerce and the statutes lack a

jurisdictional element requiring a link to interstate commerce. We agree with the

district court that there is no merit to Mr. Walters' argument. What he fails to

grasp is that "[e]ven activity that is purely intrastate in character may be regulated

by Congress, where the activity, combined with like conduct by others similarly situated, affects commerce among the States or with foreign nations." *Fry v. United States*, 421 U.S. 542, 547 (1975). Drug offenses are considered to regulate a class of activities that necessarily affect interstate commerce. *See United States v. Janus Indus.*, 48 F.3d 1548, 1556 (10th Cir. 1995). Furthermore, "the absence of formal findings concerning the effect on interstate commerce . . . does not prevent Congress from regulating under the Commerce Clause." *Id.* (quotation omitted). We specifically have held that "§ 841(a)(1) and § 846 are within Congress' power to regulate interstate commerce." *United States v. Price*, 265 F.3d 1097, 1107 (10th Cir. 2001). The statutes, therefore, are facially constitutional. We also have held that, "[w]hen Congress enacts a statute under its commerce power, it is not constitutionally obligated to require proof beyond a reasonable doubt that each individual act in the class of activities regulated had an effect on interstate commerce." *United States v. Lane*, 883 F.2d 1484, 1492 (10th Cir. 1989). Accordingly, the government was not required to prove that Mr. Walters' conduct affected interstate commerce.

Based on the foregoing, we conclude that Mr. Walters has failed to make a substantial showing of the denial of a constitutional right, and we deny his Renewed COA Application.

**IV.    Denial of Mr. Walters' Motion for an Evidentiary Hearing.**

Mr. Walters also complains that the district court erred in denying his claim that trial counsel had a conflict of interest without an evidentiary hearing. A district court is required to conduct an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. We review the district court's refusal to hold an evidentiary hearing for an abuse of discretion. *United States v. Clingman*, 288 F.3d 1183, 1187 n.4 (10th Cir. 2002). Given that Mr. Walters has failed to make a substantial showing that counsel was constitutionally ineffective, the district court did not abuse its discretion in denying an evidentiary hearing.

### Conclusion

For the foregoing reasons, we **AFFIRM** the district court's denial of Mr. Walters' § 2255 motion. We also **DENY** his Renewed COA Application and his motion for leave to file a supplemental brief, and we **DISMISS** the remainder of this appeal. We **GRANT** his motion to proceed in forma pauperis and remind

him of his obligation under 28 U.S.C. § 1915(b) to make partial payments of the filing fee until it is paid in full.  Finally, we **DENY** his motions for appointment of counsel.

Entered for the Court

Wade Brorby
Circuit Judge